## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

CIVIL ACTION NO.

CA12-   39 ML

| | |
|---|---|
| LOUIS PAOLINO and<br>MARIE ISSA,<br>    **Plaintiffs**<br><br>vs.<br><br>JF REALTY, LLC, JOSEPH I. FERREIRA,<br>ROBERT YABROUDY, LKQ ROUTE 16<br>USED AUTO PARTS, INC., DBA<br>ADVANCED AUTO RECYCLING,<br>JOSEPH I. FERREIRA, TRUSTEE OF<br>THE JOSEPH I. FERREIRA TRUST<br>    **Defendants** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

FILED

JAN 20 2012

U.S. DISTRICT COURT
DISTRICT OF R.I.

## COMPLAINT AND JURY DEMAND

### INTRODUCTION

1.    This is a civil suit brought under the citizen suit enforcement provisions of the Federal

Water Pollution Control Act, 33 U. S. C. sec. 1251, et seq. (the "Clean Water Act" or "CWA") et

seq.  Plaintiffs seek injunctive relief, declaratory judgment, civil penalties, and other relief the

Court deems appropriate with regard to the actions of the Defendants which have resulted in the

discharge of contaminated stormwater runoff into the waters of the United States from an

automobile recycling business operated by one or more of the Defendants at 290 Curran Road,

Cumberland, Rhode Island (the "Property").

### JURISDICTION AND VENUE

2.    This Court has subject matter jurisdiction and jurisdiction over the parties pursuant to 33

U.S.C. sec. 1365(a) and 28 U.S.C. sec. 1331.

3.      On October 7, 2011, the Plaintiffs provided notice of Defendants' violations of the CWA, and of their intention to file suit against the Defendants to the Administrator of the United States Environmental Protection Agency ("EPA"), the Administrator of EPA Region I – New England, the Director of the Rhode Island Department of Environmental Management ("DEM"), and to the Defendants, as required by the CWA, 33 U.S.C. sec. 1365. A copy of the notice letter under the CWA is attached hereto and incorporated herein by reference as Exhibit A.

4.      More than sixty days has passed since the notice letters under the CWA were served on the Defendants and federal and state agencies. Plaintiffs are informed and believe that neither the EPA nor the State of Rhode Island has commenced or is diligently prosecuting a court action to redress the violations of the CWA alleged in this complaint.

5.      Venue is proper in this district because the source of the violations is located within this district.

## PARTIES

6.      Plaintiffs Louis Paolino and Marie Issa are natural persons who reside at 19 Heritage Drive, Lincoln, Rhode Island. Their telephone number is (401) 359-0333. They own land abutting the Property.

7.      Defendant JF Realty, LLC, is a Rhode Island limited liability company with a principal place of business at Lincoln, Rhode Island.

8.      Defendant Joseph I. Ferreira is a natural person with a residence at Cumberland, Rhode Island.

9.      Defendant Robert Yabroudy is a natural person with a residence at Cumberland, Rhode Island.

10.     Defendant LKQ Route 16 Used Auto Parts, Inc., doing business as LKQ / Advanced

Auto Recycling ("LKQ") is a foreign corporation with a usual place of business at the Property.

11.     Defendant Joseph I. Ferreira, Trustee of the Joseph I. Ferreira Trust, has a usual place of

business at 11 Gladding Drive, Cumberland, Rhode Island.

12.     Continuing commission of the acts and omissions by the Defendants alleged herein will

irreparably harm the Plaintiffs, for which they have no adequate remedy at law.

## STATUTORY BACKGROUND

13.     The CWA makes the discharge of pollution into waters of the United States unlawful

unless the discharge is in compliance with certain statutory requirements, including the

requirement that the discharge be permitted under the National Pollution Discharge Elimination

System ("NPDES"). 33 U.S.C. secs. 1311, 1342(a), 1342(p), and that a permit first be obtained

under Sec. 1344 (Section 404).

14.     The Defendants are in continuing violation of sections 1311, 1313, and 1342 of the CWA

because: 1) They do not have a valid permit under the Rhode Island Pollution Discharge

Elimination System ("RIPDES") in the name of the actual owner and operator; 2) they are

continually discharging pollutants to the waters of the United States in violation of the RIPDES

permit (issued to a party that is neither owner or operator of the Property). The Defendants'

violations include but are not limited to discharge of pollutants in violation of state water quality

standards, failure to sample, monitor and report discharges from the Property as required, and

violation of effluent limitations.

15.     Pursuant to 33 U.S.C. sec. 1365, (a) (1), a citizen suit may be brought against any person

alleged to be in violation of (A) an effluent standard or limitation under this chapter, or (B) an

order issued by the Administrator or a State with respect to such a standard or limitation.

Pursuant to 33 U.S.C. sec. 1365 (f), the term "effluent standard or limitation under this chapter" means: (1) an unlawful act under subsection (a) of section 1311; (2) an effluent limitation or other limitation under section 1311 or 1312; (3) standard of performance under section 1316; (4) prohibition, effluent standard or pretreatment standards under section 1317; (5) certification under 1341; (5) a permit or condition thereof issued under section 1342, which is in effect under this chapter; or (7) a regulation under section 1345.

16.     Pursuant to 40 CFR 122.41, any violation of a RIPDES permit is a violation of the CWA, and any violation of the state water quality standards in the General Permit included in the Defendant's RIPDES permit is a violation of the CWA.

17.     The CWA provides for citizen enforcement actions against individuals, partnerships, or corporations for violations of NPDES permit requirements and for unpermitted discharges of pollutants. 33 U.S.C. sec. 1365(a)(1) and (f). An action for injunctive relief is authorized by 33 U.S.C. sec. 1365(a). Violators of the CWA are also subject to an assessment of civil penalties of up to $32,500 per day for each violation on or before January 12, 2009 and $37,500 per day for violations after that date. 33 U.S.C. sec. 1319(d).

## FACTS

### Ownership and Operation of the Property

18.     Plaintiffs are the owners of property on the north side of Curran Road, Cumberland, Rhode Island, shown as Lot 362 on Plat 19 in the Town of Cumberland, Rhode Island, consisting of approximately five or more acres, adjacent to the Property. Plaintiffs acquired said land in 1988 from LM Nursing Services, Inc., a corporation of which the Plaintiffs were and are the officers and directors. LM Nursing Services, Inc. acquired said land in 1985.

19.     Defendant JF Realty LLC is the owner of property also on the north side of Curran Road, Cumberland, Rhode Island, shown as 363 and 366 on Plat 19 in the Town of Cumberland, Rhode Island (the "Property").

20.     Defendant Joseph I. Ferreira purchased the Property in 1983, and in approximately 1984 began operating an automobile salvage business on the Property.

21.     In 1997, Defendant Joseph I. Ferreira transferred the Property to himself as Trustee of the Joseph I. Ferreira Trust.

22.     On or about November 2, 2005, Defendant Joseph I. Ferreira, Trustee of the Joseph I. Ferreira Trust, conveyed the Property to Defendant JF Realty, LLC, a limited liability company of which Defendant Joseph I. Ferreira is the only member.

23.     Since 2005, Defendant LKQ has rented the Property from Defendant JF Realty LLC and operated an automobile salvage business thereon.

24.     Defendant Robert Yabroudy filed an application, called a Notice of Intent, on or about June 19, 2006 for a Rhode Island Pollution Discharge Elimination System ("RIPDES") with the Rhode Island Department of Environmental management ("DEM") for the Property, falsely certifying Defendant Joseph I. Ferreira Trust as the owner of the Property and "Advanced Auto Recycling, Inc.", a non-existent entity, as the operator, and himself as Treasurer of both. The resulting RIPDES permit was not issued to the owner and operator as required by law.

25.     The Property comprises approximately thirty-nine acres. As of late 2010, there were approximately two thousand vehicles in various stages of recycling on the Property.

**Defendants' Use of Plaintiffs' Land (Intermittent Stream) for Stormwater Discharge**

26.     In or about 1984, Defendant Joseph Ferreira relocated a drainage ditch flowing from the rear of the Property out to Curran Road onto the property now owned by the Plaintiffs without

the permit required under the CWA, in violation of 33 U.S.C. sec. 1344. Said drainage ditch (the "Intermittent Stream") discharges to Curran Brook, which discharges to Robin Hollow Reservoir, a drinking water supply for the City of Pawtucket, Rhode Island.

27.     The Defendants are continuing to use the Intermittent Stream to drain a pond in the rear of the Property that contains contamination and hazardous materials, and to receive runoff, including contaminated runoff, from the Property.

28.     The Intermittent Stream is a point source discharge, and the Defendants have no permit under the Rhode Island Pollution Discharge Elimination System (RIPDES) for this discharge, in violation of 33 U.S.C. 1342.

29.     The Plaintiffs have forbidden the Defendants from discharging drainage onto the Plaintiffs' property by way of the Intermittent Stream, and the Defendants have no permission to do so. The Defendants' continuing discharge of contaminated drainage into the Intermittent Stream constitutes a continuing trespass.

### Discharge of Hazardous Materials and Oil Into Waters of the United States

30.     In October 2005, a hazardous generator inspection performed at the Property by DEM identified lacquer thinner, motor oil, antifreeze and gasoline wastes being generated at the Property. Later that month, DEM found a chemical lagoon on the Property that contained arsenic, barium, lead, and selenium.

31.     On October 5, 2005, DEM issued a Letter of Responsibility to Defendant J. Ferreira Trust and Advanced Auto Recycling c/o Defendant Joseph I. Ferreira on account of contamination in the soil, groundwater, and downstream surface water. The Letter of Responsibility required Defendant Ferreira to perform a site investigation.

32.     Defendant JF Realty, LLC retained an environmental consultant to perform the Site

Assessment. The environmental consultant submitted a Site Assessment marked "Draft" to

DEM. The Draft Site Assessment identified oil contamination in the area of the Property near

the boundary with Plaintiffs' property at a depth of ten to eleven feet, but did not adequately

identify the source of said oil.

### RIPDES Permit Issued in 2007

33.     In March 2005 DEM issued a Notice of Intent To Enforce to Defendant Joseph Ferreira

Trust for unauthorized discharge of runoff to surface waters.

34.     On June 19, 2006, Defendant Joseph Ferreira Trust as "owner" and Advanced Auto

Recycling, Inc. as "operator" filed a Notice of Intent, requesting a permit under the Rhode Island

Discharge Elimination System (RIPDES) for Storm Water Discharges under the RIPDES Multi-

Sector General Permit. Defendant Robert Yabroudy signed the Notice of Intent as Treasurer of

both the owner and operator. The application stated that the application and the information

submitted with it were, to the best of the signer's knowledge, true, accurate, and complete. The

statements in the application that Joseph Ferreira Trust was the owner and Advanced Auto

recycling, Inc. was the operator were false, which Defendant Robert Yabroudy knew or should

have known.

35.     As of June 19, 2006, the owner of the Property was Defendant JF Realty, LLC and the

operator was Defendant LKQ. The Notice of Intent was not signed by the owner or by any

officer of Defendant LKQ. Obtaining a permit by misrepresentation or failure to disclose all

relevant facts is grounds for revocation of a permit issued by a state under the CWA. 33 U.S.C.

sec. 1342 (b).

36.     On July 3, 2007, DEM issued Permit No. RIR 50M006 to Defendant Joseph Ferreira

Trust, namely, Authorization To Discharge Under The Rhode Island Pollutant Discharge

Elimination System ("RIPDES") in accordance with the incorrect identification of the owner in

the Notice of Intent. There has never been a valid RIPDES permit issued to the actual owner,

Defendant JF Realty, LLC, or the actual operator, Defendant LKQ. This is a violation of the

RIPDES Permit and the CWA.

37.     The permit states that it is "in accordance with the conditions and requirements set forth

in the 2006 Multi-Sector General Permit for Storm Water Discharge Associated With Industrial

Activity." The Multi-Sector General Permit provides in Section I (B) (3) (e) that the following

discharges are not authorized by the permit: "Storm water discharges that the Director of the

Department of Environmental Management has found to be or may reasonably be expected to be

contributing to a violation of water quality standards or is a significant contributor of pollutants."

Any violation of the state water quality standards is a violation of the permit and of the CWA.

38.     The Defendant Joseph I. Ferreira thereafter prepared and submitted to DEM a

Stormwater Pollution Prevention Plan, dated October 27, 2005, and revised on April 21, 2006

("SWPPP").

### CWA Violations: Violations of Water Quality Standards and Effluent Limitations

39.     Violations of the CWA by the Respondents by virtue of violations of water quality

standards and effluent limitations in the stormwater discharge from the Property have been well

documented in reports by numerous consultants and are continuing. These include the

following:

A. On November 13, 2002, runoff from the Property sampled by Pawtucket Water Supply Board ("PWSB") near Pole 87, which is a utility pole close to what is now the discharge channel, before it enters the Intermittent Stream, was analyzed to contain 3 ug/l of MBTE (none allowed).

B. On March 11, 2004, runoff from the Property sampled by PWSB, analyzed to contain 8 ug/l of MBTE (none allowed).

C. On March 8, 2005, runoff from the Property sampled by PWSB, analyzed to contain 9 ug/l 1,1,1-trichloroethane, 12.2 ug/l 1,3,5-trimethylbenzene, 1.4 ug/l benzene, 258 ug/l MTBE, 1.7 ug/l naphthalene, 8.6 ug/l tertiary-amyl methyl ether and 8.9 ug/l toluene (all violations). PWSB's observations included detection of a distinct solvent odor (no odor allowed).

D. On April 14, 2005, Pine River Consulting found sheen and oil globules at two points along the Intermittent Stream (none allowed).

E. March 5, 2008, DEM observed turbid water being discharge from the Property and petroleum staining on a building at the Property. This was a violation and DEM issued a Notice of Intent to Enforce to the Respondents on April 9, 2008, further discussed below.

F. March 8, 2008, consultant Herbert Johnson observed oil sheen on the surface water discharged from the Property (none allowed).

G. On October 28, 2008, runoff from the Property sampled by PWSB contained high turbidity and color (both violations).

H. On November 25, 2008, runoff from the Property sampled by PWSB contained high color, fuel odor, and sheen (all violations).

I.  During the period from January 6, 2009, through May 19, 2009, PWSB conducted
    eighteen additional field observations, samplings, and analyses. During this period
    sheen was detected once (a violation). Gasoline odor was smelled on six of nine
    occasions (These were violations). Turbidity greater 44.6 NTU was measured on
    eight of twenty-six occasions (These were violations). The water quality criteria for
    turbidity for Curran Brook, Intermittent Stream, and discharge channel is no more
    than 5 NTUs over background. Turbidity of 44.6 NTUs is a violation, according to a
    Notice of Violation dated March 2, 2010 issued by DEM. Total iron was measured to
    be greater than 1 mg/l on six of twenty-three occasions. (These were in excess of the
    benchmarks, or corrective action levels, in the RIPDES permit, and indicators that the
    stormwater system was not effective.) The PWSB measurements before and after the
    Stormwater Pollution Prevention Plan ("SWPPP") was implemented show an
    increased frequency for many pollutants after the Respondents certified that the
    SWPPP installation was complete on August 12, 2008.

J.  During a storm event on or about December 2, 2009, consultant Environmental
    Resource Associates, Inc. ("ERA"), Alvin Snyder, president, obtained and analyzed
    samples of the storm water from the discharge channel at the Property, before its
    confluence with the Intermittent Stream. Turbidity in the discharge channel increased
    from 15 to 100 NTU as the storm progressed (a violation). Total suspended solids in
    the discharge channel increased from 12 to 320 mg/l. Total lead in the discharge
    channel increased from less than .0.04 to 0.253 mg/l, which exceeded the
    benchmarks, or corrective action levels, in the permit and indicates that the SWPPP is
    not effective. Total Petroleum Hydrocarbon (TPH) in the discharge channel was

10

initially 350 ug/l and significantly increased to 2,200 ug/l during the storm. An analysis of the TPH chromatogram by the laboratory determined the petroleum to similar to motor oil or compressor oil (This is a violation).

K. On December 4, 2009, Alvin Snyder of ERA obtained a soil sample from below a rock in the discharge channel from the Property, on the Paolino-Issa property about ten feet west of the Property boundary. Mr. Snyder observed that when he extracted the soil sample, a sheen of oil immediately bubbled up to the surface. This soil sample was analyzed and found to contain Total Petroleum Hydrocarbons of 7000 mg/kg. This is violation of the Rhode Island Remediation Regulations for maximum concentrations of Oil and Hazardous Materials. Discharge of any TPH into the discharge channel is a violation of water quality standards. The analytical results from the soil indicate continuing violation of these water quality standards in the stormwater discharge from the Property.

L. On or about November 14, 2009, Television Channel 6 News filmed and televised footage showing discharge from the Property showing turbidity and an oil sheen. The news report includes an interview with David Chopy, Chief of DEM's Office of Compliance and Inspection, who said that the video shows that the stormwater system at the Property is not working.

M. On November 20, 2009, DEM conducted an inspection of the discharge from the Property. It found that turbidity in the discharge from the Property from the small diameter pipe in the amount of 64.0 NTUs and from the large diameter pipe in the amount of 44.6 NTUs. These were determined to be violations by DEM, and are the subject of a Notice of Violation issued by DEM on March 2, 2010.

N.  PWSB samples the discharge from the Property near Pole 87 on a regular basis.  The results have included:  February 10, 2009, turbidity: 38.6 NTUs, iron: 3.16; March 3, 2009, turbidity: 83.5 NTUs; March 10, 2009, turbidity: 140.0 NTUs; March 17, 2009, turbidity: 45.1 NTUs, iron: 2.95 mg/l; March 24, 2009, iron: 1.3 mg/l; April 1, 2009, iron 2.4 mg/l; April 7, 2009, turbidity: 140.0 NTUs; April 22, 2009, turbidity: 169 NTUs; May 19, 2009, iron: 1.13; June 23, 2009, turbidity: 134.0 NTUs; November 24, 2009, turbidity: 68 NTUs; January 5, 2010, iron: 1.36 mg/l; January 19, 2010, turbidity: 114.0 NTUs; January 26, 2010, turbidity: 726 NTUs, iron: 1.43 mg/l; February 25, 2010, turbidity: 502.0 NTUs; March 2, 2010, turbidity: 57.3 NTUs; March 16, 2010, turbidity: 91.5 NTUs; March 23, 2010, turbidity: 147.0 NTUs, March 30, 2010, turbidity: 572 NTUs; April 14, 2010, turbidity: 45.0 NTUs; April 20, 2010, iron: 3.26 mg/l; April 27, 2010, iron:1:68 mg/l; November 17, 2010, turbidity: 78.5 NTUs; March 1, 2011, turbidity: 178 NTUs; March 8, 2011, turbidity: 62.8 NTUs; April 26, 2011, iron, 1.92 mg/l; and May 24, 2011, turbidity: 130 NTUs.  All of the above amounts of turbidity exceed the RIDEM's turbidity measurement of 44.6 NTU's (Item #13) that produced a violation of the water quality standards.  All of the above amounts of iron are above the corrective action limits in the RIPDES permit.

O.  On September 8, 2011, consultant Environmental Resource Associates, Inc. ("ERA"), Alvin Snyder, president, obtained and analyzed samples of the stormwater from the discharge channel (upstream of an 8" corrugated drain pipe from the street that also enters the channel), the 8" drain pipe, and the entrance to the culvert beneath Curran Road.  Turbidities were measured to be 96.3 NTU's, 31.1 NTU's and 95.6 NTU's, respectively.  Once again, the turbidity measurements were greater than those

12

measured by RIDEM (Item #13) that resulted in a violation of the water quality

regulation. In addition, stormwater from the street contained less turbidity than that

discharged by the Property.

40.     Such violations continue at the present time.

41.     The stormwater discharge from the Property violates the state water quality standards on

a continuing basis. This is a violation of the RIPDES permit and the CWA.

### 2008 and 2010 Violation Notices by DEM Show that the System Does Not Work

42.     On April 9, 2008, DEM issued a Notice of Intent to Enforce to the Joseph I. Ferreira

Trust, which stated that DEM had reason to believe that the Trust was in violation of Chapter 46-

12 of the Rhode Island General Laws, DEM Water Quality Regulations, the DEM Regulations

for the Rhode Island Pollution Discharge Elimination System, and the DEM Rules and

Regulations Governing the Administration and Enforcement of the Freshwater Wetlands Act.

This arose from an inspection by DEM on March 5, 2008 that turbid water was being discharged

from the storm drain system on the Property into the Intermittent Stream. In addition, heavy

petroleum staining was observed on the exterior wall of the building and the paved surface of the

ground due to lack of containment. The Notice of Intent To Enforce specified several corrective

actions that were required.

43.     The Respondents did not correct the turbidity problems identified by DEM. On March 2,

2010, DEM issued a Notice of Violation to JF Realty LLC and Joseph Ferreira. The Notice of

Violation stated that DEM inspected the Property on November 20, 2009, and that pollutants

were discharged from the Property to Curran Brook. It said that the discharge exceeded the

water quality standards for turbidity, and that the Respondents had not taken adequate steps to

treat the stormwater discharges from the outfall pipes to meet the water quality criteria for

Curran Brook. The Notice required submission of a Corrective Action Plan within sixty days
and payment of a penalty of $2,670.00.

44.     David E. Chopy, Chief of DEM Office of Compliance and Inspection, testified in a

deposition that the violations referred to in the 2008 and 2010 Notices were directly related to the

purpose for which the Notice of Violation was issued in 2005 and were evidence that the

Respondents' stormwater system was not working. He also testified that DEM was concerned

about an oil sheen that was observed in the discharge from the Property in light of the fact that

the outflow discharges downstream to a water supply.

### The Paolino-Issa Property is Being Contaminated by the Property

45.     The Plaintiffs have retained ERA to address the question whether the Paolino-Issa

property is being contaminated by the Property.

46.     Alvin Snyder, president of ERA, has concluded that storm water passing through the

Property is not being treated properly, thereby causing the stream located on and, likely,

downgradient of the Paolino property to be polluted with sediment, turbidity, petroleum, and

heavy metals such as lead.

### Defendants Are in Violation of the Sampling and Reporting Requirements

47.     Each holder of an NPDES permit must monitor and report on its compliance with its

permit. Each discharger must install, use, and maintain monitoring equipment and sample its

effluents. 33 U.S.C. sec. 1318 (a) (4) (A). The discharger must report the results to the

Environmental Protection Agency and the state agency that issues the permit at intervals

specified in the permit. 40 CFR sec. 122.41(1)(4).

48.     On September 23, 2010, Eric Beck of DEM sent a letter to Robert Yabroudy of Joseph

Ferreira Trust. This letter pointed out that the RIPDES permit required facility inspections and

quarterly monitoring. The letter said that DEM received reports from the Respondents on July 25, 2008 and July 28, 2010. The report received on July 25, 2008 was for a sample taken in 2005, before the stormwater system was constructed. The report received on July 28, 2010 was for sampling not taken in the correct quarters, and showed exceedances of the benchmark values for Iron and Aluminum.

49.     David Chopy, Chief of DEM Office of Compliance and Inspection, has testified in a deposition in 2010 that the amount of sampling done by the Respondents was nowhere near the amount required, and that the Respondents were not in compliance with federal regulations relating to sampling. The Respondents failure to perform the required sampling and reporting is a violation of the RIPDES permit and a violation of the CWA.

### Use of Plaintiffs' Land Without Permission is a Violation of the CWA

50.     Joseph Ferreira and the other Respondents have been continuously trespassing on the Paolino-Issa property by discharging drainage on it without permission. The Intermittent Stream is a drainage ditch that was dug in 1983 by Joseph Ferreira on what is now the Paolino-Issa property without permission.

51.     The Respondents trespassed further on the Paolino-Issa property in 2007 when they erected part of their stormwater discharge system, including a headwall, riprap, and channel on the Paolino-Issa property without permission.

52.     The Respondents trespassed further still on the Paolino-Issa property in late 2010 when they installed additional rip-rap and terra-tubes on the Paolino-Issa property without permission as a response to a Notice of Violation of their Rhode Island Pollution Discharge Elimination ("RIPDES") permit.

53.     The stormwater plan submitted to DEM on behalf of Joseph Ferreira Trust erroneously showed most of the Intermittent Stream to be on the Property. The plan bears a note that says: "Aerial photography used for mapping was taken by Col-East, Inc. on March 27, 2003." A representative of Commonwealth Engineering, which prepared this plan, later admitted that it did no actual survey of the boundary line, but rather relied on Tax Assessors' maps and aerial photography. This is not competent to establish a boundary line.

54.     The RIPDES states that it does not convey any property rights.

55.     Furthermore, the Respondents did not obtain any permit from the U.S. Army Corps of Engineers as required by 33 U.S.C. sec. 1344 for the placing of riprap and stones in the Intermittent Stream.

**Defendants Did Not Transfer the Permit in Compliance with the Regulations**

56.     On September 23, 2010, Eric Beck of DEM sent a letter to Defendant Robert Yabroudy of Joseph Ferreira Trust. This letter pointed out that the RIPDES Notice of Intent submitted on June 19, 2006 listed Joseph Ferreira Trust as the owner, that the RIPDES files did not indicate any change of ownership, but that DEM's Fresh Water Wetlands Program had received notice of a change of ownership. Mr. Beck noted that all transfers must meet the requirements of Rule 22(b) of the RIPDES Regulations, and attached a copy. Mr. Beck also noted that the Plan is required to be signed by the owner and operator of the facility. The failure of the Respondents to submit a Notice of Intent signed by the actual owner and operator is a violation of the RIPDES Regulations and the CWA.

57.     This is a continuing violation of the CWA. By letter dated October 14, 2010, David Holzinger, Operations Manager of "LKQ Advanced Auto Recycling," made an ineffective attempt to "transfer" the invalid storm water permit. A letter dated October 14, 2010 was

16

submitted to DEM. It is on the letterhead of "LKQ Advanced Auto Recycling." It contains a

handwritten notation: "Joseph Ferreira Trust hereby transfer the above referenced permit on Oct.

28, 2005."

58.     This backdated, partially handwritten document did not and does not comply with the

RIPDES regulations for transfer of a RIPDES permit.

59.     The Defendants are in continuing violation of their RIPDES permit and the CWA for

failure to have a RIPDES in the name of the owner and operator of the Property.

<strong>COUNT I-Violation of CWA</strong>

60.     The Plaintiffs repeat and reallege their allegations in paragraphs 1 through 56.

61.     The Defendants are in continuing violation of the CWA in the ownership and operation

of the Property, causing great damage to the Plaintiffs.

62.     The Plaintiffs have no adequate remedy at law.

<strong>DEMANDS FOR RELIEF</strong>

WHEREFORE, the Plaintiffs pray this Honorable Court to enter judgment against the

Defendants:

1.      Declaring the Defendants in violation of the CWA;

2.      Enter a preliminary injunction enjoining the Defendants from discharging pollutants from

the Property, whether through the outfall at the southwest corner of the Property or by drainage

into the Intermittent Stream, except in full and complete compliance with the CWA;

3.      Enter a permanent injunction as to prayer 2;

4.      Enter a preliminary injunction enjoining the Defendants from discharging any drainage

from the Property until they have a valid RIPDES permit in the name of the Owner and Operator,

17

that complies with all regulations, and that does not include the use of any portion of Plaintiffs' land;

5.      Enter a permanent injunction as to prayer 4;

6.      Order Defendants to pay civil penalties of $32,500 per day for each violation on or before January 12, 2009, and $37,500 per day for violations after that date;

7.      Order Defendants to remediate the damage they have done to Plaintiffs' Properties;

8.      Order Defendants to redirect the Intermittent Stream onto the Defendants' Property;

9.      Award Plaintiffs' costs (including reasonable investigative, attorney, witness, and consultant fees) as authorized by CWA, 33 U.S.C. sec. 1365(d);

10.     Award any such further relief this Court deems meet and just.

**THE PLAINTIFFS DEMAND A TRIAL BY JURY AS TO ALL ISSUES**

Plaintiffs,
By their attorneys,

Ronald L. Bonin
MORETTI, PERLOW & BONIN
1070 Reservoir Avenue
Cranston, RI 02910
(401) 943-5500
rlblaw327@yahoo.com

Michael J. O'Neill
McGREGOR & ASSOCIATES, P.C.
15 Court Square
Boston, MA 02108
(617) 338-6464
moneill@mcgregorlaw.com

F:\data\wpdocs\2503\cwa complaint-12-26-11.doc