UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

LOUIS PAOLINO and
MARIE ISSA,
    Plaintiffs

    v.                                                                 C.A. No. 12-39-ML

JF REALTY, LLC, JOSEPH I. FERREIRA,
ROBERT YABROUDY, LKQ ROUTE 16
USED AUTO PARTS, INC., DBA
ADVANCED AUTO RECYCLING,
JOSEPH I. FERREIRA, TRUSTEE OF
THE JOSEPH I. FERREIRA TRUST,
    Defendants

**MEMORANDUM AND ORDER**

    This is the third effort by Louis Paolino and Marie Issa (together, the "Plaintiffs") to bring a citizen suit under the CWA. The Plaintiffs seek damages for alleged contamination from an abutting former dump site onto the Plaintiffs' property. The contaminated property (the "Property"), located on Curran Road in the Town of Cumberland, Rhode Island, comprises 39 acres and contains approximately 2,000 automobiles in various stages of recycling. The Property is owned and/or controlled by JF Realty, LLC ("JF"), of which Joseph I. Ferreira ("Ferreira") is the only member. In 1984, Ferreira began using the Property for an automobile salvage business. Since 2005, it has been leased to a Massachusetts corporation, LKQ Route 16 Used Auto Parts, Inc. d/b/a Advanced Auto Recycling ("LKQ," together with JF, Ferreira and

1

Robert Yabroudy ("Yabroudy"), the "Defendants"). The matter is before the Court on the Defendants' motion to dismiss the Plaintiffs' most recent complaint (the "Complaint") for failure to establish a mandatory prerequisite.

## I. Factual Summary and Procedural History[1]

In 1985, the Plaintiffs acquired a five acre lot abutting the Property from LM Nursing Services, Inc. ("LM"),[2] of which they are the officers and directors. The Complaint alleges, *inter alia*, that Ferreira has filled in wetlands without a permit and that Ferreira and/or his enterprise are discharging hazardous materials and oil into public waters. With respect to the Plaintiffs' property, the Plaintiffs allege that (1) Ferreira has relocated a drainage ditch which directs contaminated water onto the plaintiffs' property, Complaint ¶ 26; (2) storm water runoff is transporting vehicular fluids (motor oil, antifreeze, battery acid, etc.) onto the Plaintiffs' property, id. ¶ 46 ; and (3) the Defendants have been continuously trespassing by erecting a stormwater discharge system on the Plaintiffs' property in 2007 and by installing additional rip-rap and terra tubes in late 2010. Id. ¶¶ 51, 52.

---

[1] Plaintiffs' prior efforts in litigating this matter, together with detailed description of the facts and the rationale of the New Hampshire Court for dismissing the Plaintiffs' federal claims are set forth in LM Nursing Serv., Inc. v. Ferreira, No. 09-cv-413-SJM-DLM, 2011 WL 1222894 (D.R.I. Mar. 30, 2011).

[2] LM acquired the lot in 1985. Although LM was a plaintiff in the prior action, it is not a plaintiff in this litigation.

Litigation in connection with these allegations began in 2006, when Plaintiffs filed a complaint in Rhode Island State court. After the Plaintiffs added claims under various federal environmental statutes in their third amended complaint, the Defendants removed the case to this Court on September 4, 2009.

On March 30, 2011, Chief Judge Steven J. McAuliffe[3] issued an order dismissing all federal claims without prejudice for lack of proper notice and remanding all state claims to the Rhode Island Superior Court.[4] After setting out, in great detail, the strict notice requirements of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), the Resource Conservation and Recovery Act ("RCRA") and the Clean Water Act ("CWA"), Chief Judge McAuliffe concluded that the Plaintiffs had failed to comply with the notice requirements of the various federal statutes they had invoked; e.g., that they had failed to serve proper notice on the registered agents of LKW and the Ferreira Trust. The notice itself was deficient in that it did not contain the Plaintiffs' full contact information; it was not served on all the appropriate state and federal agencies; and it did not

---

[3] The case was transferred to Chief Judge McAuliffe when this Court had a vacancy for a protracted period of time. This Court expresses its thanks to Chief Judge McAuliffe for providing assistance.

[4] The state claims were subsequently litigated in Rhode Island state court, where the Defendants prevailed in all but the trespass claim.

contain "sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated." LM Nursing Serv., Inc. v. Ferreira, No. 09-cv-413-SJM-DLM, 2011 WL 1222894 at *8. Moreover, the Plaintiffs had failed to provide copies of the complaint to the Attorney General of the United States and the Administrator of the Environmental Protection Agency ("EPA") as required under the CWA and CERCLA. Id.

On June 6, 2011, the Plaintiffs filed a new complaint, see Paolino et al v. JF Realty, LLC et al, C.A. No. 11-228-ML, against the Defendants. That complaint included Yabroudy, whose involvement appears to be limited to having filed a notice for a Rhode Island Department of Environmental Management ("RIDEM") permit, in which he identified himself as treasurer of the Joseph Ferreira Trust and JF. Plaintiffs again asserted claims under the CWA and for trespass. Together with this second complaint, the Plaintiffs also sought a temporary restraining order ("TRO") against the Defendants. Following a hearing before this Court on June 21, 2011, the motion for TRO was denied.

In the course of a preliminary injunction hearing on August 18, 2011, this Court raised the issue of jurisdiction in pointing out that the most current pre-litigation notice again lacked the Plaintiffs' full contact information. The parties were directed to submit memoranda whether the mandatory notice requirements of the CWA had been met. Within a week of the hearing, the parties

submitted a stipulation of dismissal and the Court dismissed the action without prejudice.

The Complaint now before this Court was filed on January 20, 2012. Although the Plaintiffs again include allegations of trespass on their land, the one-count Complaint is limited to an allegation of violations of the CWA. On February 14, 2012, the Defendants filed a motion to dismiss on the ground that the Plaintiffs, once again, failed to allege or establish a mandatory prerequisite. Specifically, the Defendants assert that (1) the contents of Plaintiffs' pre-suit notice was defective under 40 CFR § 135.3(a); (2) service on Yabroudy was defective under § 135.2; and (3) the Plaintiffs failed to comply with § 135.4, which required them to mail an as-filed and date-stamped copy of the Complaint to various recipients. The Defendants seek dismissal of the Complaint with prejudice for the Plaintiffs' repeated failure to cure deficiencies and comply with the mandatory prerequisites under the CWA even after being provided with detailed instructions by Chief Judge McAuliffe. Mot. Dismiss at 9. The Defendants also point out that the Plaintiffs' repeated attempts at bringing this suit has drawn on the Defendants' time and resources. Id.

In their response, filed on March 2, 2012, the Plaintiffs maintain that (1) the fifteen-page pre-suit letter was reasonably specific; (2) service of the letter on Yabroudy, although apparently sent to the wrong address, was proper because the pre-

suit letter in the previous case was also sent to him at that same address and had been accepted there; and (3) although Plaintiffs apparently did not send a copy of the Complaint to the Attorney General and the Administrator and the Regional Administrator of the EPA until <u>after</u> Defendants had filed their motion to dismiss, "[t]he CWA does not contain any time limit for such service or sanction for non-compliance." Pltfs.' Obj. at 2. The Defendants filed a reply on March 12, 2012 in which they again urge the Court to dismiss the Complaint with prejudice. Defs.' Reply at 4.

**II. Standard of Review**

Rule 12 of the Federal Rules of Civil Procedure governs the dismissal of a complaint. A case may be dismissed, *inter alia*, for lack of subject-matter jurisdiction, Fed. R. Civ. P. 12(b)(1), or for failure to state a claim upon which relief can be granted, Fed. R. Civ. P. 12(b)(6).[5] The standard of review under subsection 12(b)(1) is "similar to that accorded a dismissal for failure to state a claim" under subsection 12(b)(6). Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995); Puerto Rico Tel. Co. v. Telecomm. Regulatory Bd. of Puerto Rico, 189 F.3d 1, 14 n.10 (1st Cir. 1999)

---

[5] As the Plaintiffs point out, the Defendant's memorandum does not specify pursuant to which subsection of Federal Rule 12 they seek dismissal of the Complaint. However, as the Defendants' argument is focused on the Plaintiffs' alleged failure to establish a mandatory prerequisite, "[t]he proper vehicle for challenging a court's subject-matter jurisdiction is Federal Rule of Civil Procedure 12(b)(1)." Valentin v. Hospital Bella Vista, 254 F.3d 358, 362 (1st Cir. 2001).

6

("The standard of review . . . is the same for failure to state a claim and for lack of jurisdiction."). However, "[w]hile the court generally may not consider materials outside the pleadings on a Rule 12(b)(6) motion, it may consider such materials on a Rule 12(b)(1) motion." Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002).

In a jurisdictional challenge, the burden of proving jurisdiction is on the party invoking it. Murphy v. United States, 45 F.3d at 522; Mercado Arocho v. United States, 455 F. Supp.2d 15, 17 (D.P.R. 2006)("Plaintiff shall meet the "burden of establishing the factual predicates of jurisdiction by a preponderance of the evidence.'")(citations omitted).

As the First Circuit has explained, "[t]here are two types of challenges to a court's subject matter jurisdiction: facial challenges and factual challenges." Torres-Negron v. J & N Records, LLC, 504 F.3d 151, 162 (1st Cir. 2007). In a facial challenge, the Court considers whether "the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [plaintiff's] complaint are taken as true for purposes of the motion.'" Id. (citation omitted). In a factual challenge, however, "'a court's power to make findings of fact and to weigh the evidence depends on whether the factual attack on jurisdiction also implicates the merits of the plaintiff's cause of action.'" Id. (quoting Garcia v. Copenhaver, Bell & Assocs., 104

F.3d 1256, 1261 (11th Cir. 1997).  See also Hernandez-Santiago v. Ecolab, Inc., 397 F.3d 30, 33 (1st Cir. 2005)("Where a party challenges the accuracy of the pleaded jurisdictional facts, the court may conduct a broad inquiry, taking evidence and making findings of fact."); Valentin v. Hospital Bella Vista, 254 F.3d at 364 ("[F]actual challenges . . . place in issue the accuracy, as opposed to the sufficiency, of the plaintiff's jurisdictional allegation.").  In other words, in a factual attack, "the plaintiff's jurisdictional averments are entitled to no presumptive weight; the court must address the merits of the jurisdictional claim by resolving the factual disputes between the parties." Id. at 363.

**III. Notice Requirements for Suit under the CWA**

The CWA contains a Citizen suit provision which permits a civil action against any person who, *inter alia*, "is alleged to be in violation of (A) an effluent standard or limitation under this chapter..." 33 U.S.C. § 1365(a)(1).  However, "[n]o action may be commenced . . . prior to sixty days after the plaintiff has given notice of the alleged violation (I) to the Administrator, (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator of the standard, limitation, or order." 33 U.S.C. §1365(b)(1)(A).

Compliance with the CWA's notice provision is mandatory and failure to provide sufficient notice generally bars a citizen suit

under the CWA. See, e.g. Hernandez v. Esso Standard Oil Co., 571 F. Supp.2d 305, 310 (D.P.R. 2008)(citing Hallstrom v. Tillamook County, 493 U.S. 20, 31, 110 S.Ct. 304, 107 L.Ed.2d 237 (1989)). The First Circuit, rejecting a "pragmatic" approach to the sixty-day notice provision in environmental statutes, requires strict compliance with such notice provisions. Garcia v. Cecos Intern., Inc., 761 F.2d 76, 79-80 (1st Cir. 1985).

With respect to the necessary contents of the pre-litigation notice, applicable CWA regulation 40 CFR § 135.3(a) specifies:

> Violation of standard, limitation or order. Notice regarding an alleged violation of an effluent standard or limitation or of an order with respect thereto, **shall include sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice.** 40 CFR § 135.3(a)(emphasis added).

Regarding the requisite prior notice, CWA regulation 40 CFR § 135.2 states:

> If the alleged violator is an individual or corporation, service of notice shall be accomplished by certified mail addressed to, or by personal service upon, the owner or managing agent of the building, plant, installation, vessel, facility, or activity alleged to be in violation. A copy of the notice shall be mailed to the Administrator of the Environmental Protection Agency, the Regional Administrator of the Environmental Protection Agency for the region in which such violation is alleged to have occurred, and the chief administrative officer of the water pollution control agency for the State in which the violation is alleged to have occurred. If the alleged

9

> violator is a corporation, a copy of such notice also shall be mailed to the registered agent, if any, of such corporation in the State in which such violation is alleged to have occurred. 40 CFR § 135.2.

In addition, once the complaint has been filed, CWA regulation 40 CFR § 135.4 provides:

> A citizen plaintiff shall mail a copy of a complaint filed against an alleged violator under section 505(a)(1) of the Act to the Administrator of the Environmental Protection Agency, the Regional Administrator of the EPA Region in which the violations are alleged to have occurred, and the Attorney General of the United States.
>
> (b) The copy so served shall be of a filed, date-stamped complaint, or shall be a conformed copy of the filed complaint which indicates the assigned civil action number, accompanied by a signed statement by the plaintiff or his attorney as to when the complaint was filed.
>
> (c) A citizen plaintiff shall mail a copy of the complaint on the same date on which the plaintiff files the complaint with the court, or as expeditiously thereafter as practicable. 40 CFR § 135.4.

### IV.  The Parties' Positions

The Defendants assert that the Plaintiffs failed to comply with CWA regulations which address (A) upon whom and how notice must be served, and (B) the requisite contents of the notice. In addition, the Defendants state that (C) the Plaintiffs failed to comply with the CWA regulation regarding proper service of the complaint.  The Plaintiffs generally reject the Defendants' contention.

(A) Notification of Mr. Yabroudy

In Yabroudy's deposition testimony from April 20, 2010, he provided an address for his personal residence as well as his place of employment at that time. The pre-litigation notice to Yabroudy, however, was sent to the Property at Curran Road. According to the Defendants, Yabroudy has not worked at the Property for more than six years.

In response, the Plaintiffs suggest that "[t]he pre-suit letter in the previous case, dated March 18, 2011," was sent to Yabroudy at the Property address and was "received and signed for." Def.'s Obj. Mem. 1-2. From the submissions of the Plaintiffs, however, it appears that the notice applicable to the instant litigation was returned with a return label on which the option "refused" was checked. The Plaintiffs submit that neither the CWA nor the related regulations "specify the address to which the Letter is to be sent." Id. at 4. The Plaintiffs further suggest that the mailing was not defective and that "[d]eclining to accept a notice cannot be bootstrapped to be a defective notice." Id. at 4. Finally, the Plaintiffs argue that, even if the mailing to Yabroudy was defective, the Court should not dismiss the entire suit. Id. at 7.

It is undisputed that the notice was not personally served on Yabroudy and that it was not sent to Yabroudy at his residential or work address, both of which he had disclosed to the Plaintiffs in his deposition. Regardless of whether the notice was returned as

11

"refused," whether the notice was sent to other individuals, or whether Yabroudy may have previously received a notice relating to another lawsuit, the notice was defective. The Court is not required, as the Plaintiffs suggest, to "infer . . . that Mr. Yabroudy received and read the Letter when it was delivered." Defs.' Obj. Mem. at 4.

The Defendants's objection with respect to the pre-suit notification is limited to the Plaintiffs' failure to serve proper notice on Yabroudy. While the Plaintiffs' non-compliance with 40 CFR § 135.2 may not be sufficient, by itself, to dispose of the entire Complaint; it does, however, preclude continued litigation against Yabroudy.

(B) Contents of the Pre-Litigation Notice

The notice provisions of the CWA and other environmental statutes are designed to allow Government agencies to take responsibility for enforcing environmental regulations and to afford alleged violators the opportunity to bring themselves into compliance with the environmental regulation at issue. Hallstrom v. Tillamook Cty., 493 U.S. 20, 29, 110 S.Ct 304, 107 L.Ed.2d 237 (1989). Either one of those solutions obviates the need for a citizen suit. Id. Consequently, a private suit under the CWA is disallowed if the pre-litigation notice is insufficient. Hallstrom v. Tillamook Cty., 493 U.S. at 31, 110 S.Ct 304, 107 L.Ed.2d 237; Hernandez v. Esso Standard Oil Co., 371 F. Supp. 2d 305, 310

(D.P.R. 2008). The First Circuit has firmly rejected a functional approach concerning the commencement of a citizen suit under a federal environmental statute, requiring, instead, "strict compliance with the notice provisions." Garcia v. Cecos Int'l, Inc., 761 F.2d 76, 79-80 (1st Cir. 1985)(finding no federal jurisdiction based on plaintiffs' failure to follow mandatory procedures for citizen suits).

The Defendants assert that the Notice fails to "identify the what, when, and where of each alleged violation," see Defs.' Mem., 7, and they suggest that the Plaintiffs have not materially amended the pre-litigation notice that was previously rejected as inadequate. Id. In response, the Plaintiffs state that the fifteen page letter includes a report by an environmental consultant and that it is "reasonably specific." Pltfs.' Mem. 2.

Pursuant to 40 CFR § 135.3(a), the pre-litigation notice must "include sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, [and] the date or dates of such violation." 40 CFR § 135.3(a

The pre-litigation notice in this case generally asserts that the Defendants are "in continuing violation" of the CWA because "1) They do not have a valid permit under the Rhode Island Pollution

13

Discharge Elimination System ("RIPDES") in the name of the actual owner and operator; 2) they are continually discharging pollutants to the waters of the United States in violation of the RIPDES permit (issued to a party that is neither owner or operator of the Property)[6]."  Second page of Notice.  The Plaintiffs also allege that the Defendants' violations "include are but are not limited to discharge of pollutants in violation of state water quality standards, failure to sample, monitor and report discharges from the Property as required, and violation of effluent limitations." Id.

Plaintiffs recount the history of the Property in great detail and they allege, inter alia, that, in 1983, Ferreira redirected a stream from the Property onto what is now the Plaintiffs' property. Third page of Notice. According to the Plaintiffs, "[e]xtensive contamination of the Property for many years has been well documented in many sources." Fourth page of Notice.  Among other sources, the Plaintiffs refer to a report prepared by Weston Solutions Inc. (the "Weston Report") on behalf of the United States Environmental Protection Agency ("EPA") in April 2004, which "document[s] the existence of hazardous materials and oil at

---

[6] The Plaintiffs repeatedly allege in their pre-litigation notice that, although RIDEM issued a RIPDES permit to the Joseph Ferreira Trust, the Trust was not the owner or operator and no valid RIPDES permit was issued to JF Realty LLC as owner or LKQ as operator. Sixth page of Notice.

14

numerous locations on the Property." Id. The Plaintiffs also list fifteen separate so-called "violations of water quality standards and effluent limitations" under the CWA. Seventh page of Notice. The specified violations are alleged to have occurred between November 13, 2002 and September 8, 2011 and include observations by Pine River Consulting of sheen and oil globules at two points of the intermittent stream, observations by consultant Herbert Johnson of oil sheen on the surface water discharged from the Property, and news reports of Television Channel 6 News showing turbidity and an oil sheen on discharge from the Property. Seventh and Eighth page of Notice. Although the respective descriptions of the alleged "violations" are generally followed by a statement that the finding or observation "is a violation," not one of the listed items identifies "the specific standard [or] limitation" of the CWA that has allegedly been violated as a result of the Plaintiffs' conduct.

While the Plaintiffs generally assert that the Defendants are "in violation of the sampling and reporting requirements" and that use of the "Plaintiffs' land without permission is a violation of the CWA," see Eleventh page of Notice, the Plaintiffs' assertions do not explain how and which specific standard of the CWA were thus violated. Although the Notice is replete with descriptions of signs of possible contamination at the Property as well as conclusions by various environmental consultants, it is unclear how the various findings relate to specific standards imposed by the CWA.

15

Essentially, the Notice presents a collection of facts spanning decades, see, e.g, the Fourth Page of the Notice, referring to water samples taken in December 2004, as well as samples taken from a culvert on the Property in 1985.

Collectively, the facts asserted by the Plaintiffs offer some support for the Plaintiffs' contention that pollution is present at the Property and that the Defendants are directing some of their drainage onto the Plaintiffs' property. However, the Notice fails to provide sufficiently specific information for the recipients to identify which CWA standard is being violated. As such, the information is not sufficient to afford the Defendants an opportunity to bring themselves into compliance with the CWA, nor does it assist the EPA in determining whether an enforcement action is indicated in this case.

(C) Mailing of the Complaint

Finally, the Defendants assert that the Plaintiffs failed to mail copies of the filed, date-stamped complaint to the EPA Administrator, the Regional Administrator of the EPA, and the Attorney General of the Unites States. In response, the Plaintiffs state that the requisite mailing was done on February 17, 2012. They also point out that the applicable CWA regulation, 40 CFR § 135.4 "does not contain any time requirement for the service of a copy of the Complaint." Pltfs.' Obj. at 12.

It is undisputed that the Complaint was filed on January 20,

2012, and that the Plaintiffs did not perform the mandatory mailing until February 17, 2012, three days after the Defendants filed their motion to dismiss - in which the Defendants drew attention to the Plaintiffs' failure to adhere to the CWA mailing requirement.

The CWA regulation, while not setting an absolute deadline, requires a citizen plaintiff to "mail a copy of the complaint <u>on the same date on which the plaintiff files the complaint with the court, or as expeditiously thereafter as practicable</u>." 40 CFR §135.4(c)(emphasis added). Plaintiffs have offered no explanation as to why they did not provide the requisite copies until almost a month had passed since the filing of the Complaint.[7] As the Plaintiffs point out, the copies of the Complaint have now been mailed and 40 CFR § 135.4 has been complied with, albeit belatedly. While failing to file the requisite pre-litigation notice is clearly fatal to a claim under the CWA, the Defendants have submitted no authority to support their contention that late service of the copies of the Complaint necessarily results, by itself, in dismissal of the suit. However, when viewed together with the more substantive shortcoming of the Notice and the Plaintiffs' failure to properly serve Yabroudy, it is apparent that the Plaintiffs' have again failed to comply with several of the

---

[7] The Court notes that, as Chief Judge McAuliffe pointed out in his detailed March 28, 2011 order, the Plaintiffs also failed to provide the requisite copies of their earlier complaint. Order at 18.

CWA's requirements.

## Conclusion

As previously noted, this is the third time the Plaintiffs have sought to litigate this matter pursuant to a federal environmental statute. Although the Plaintiffs have been repeatedly advised of the necessity to comply with mandatory procedural requirements in order to bring a citizen suit under the CWA, their most recent efforts again fall short. At least one of the Defendants was not properly served with the pre-litigation notice; the Notice itself is inadequate in advising the recipients which CWA standard is alleged to have been violated; and it is apparent that the Plaintiffs, without further explanation, did not send copies of the Complaint to the various governmental agencies until after this omission was pointed out to them by the Defendants.

In sum, notwithstanding the detailed instructions provided to them in Chief Judge McAuliffe's March 28, 2011 order, the Plaintiffs' third attempt at bringing a federal claim against the Defendants in this Court is no more successful than their prior efforts. Twice, the Plaintiffs were put on notice of certain inadequacies in their compliance with mandatory prerequisites. Twice, they failed to adhere to the statutory requirements, forcing the Defendants to spend time and resources to respond to three separate complaints. Based on these circumstances, this Court finds it appropriate to dismiss the Plaintiffs' Complaint with

prejudice. See Hayduk v. Lanna, 775 F.2d 441, 445 (1st Cir. 1985) (holding that "dismissal of the counts after plaintiffs had two opportunities to amend their complaint was well within the discretion of the district court especially since the plaintiffs were notified before amending a second time" that the allegations in their first amended complaint were inadequate).

SO ORDERED.

/s/ Mary M. Lisi

Mary M. Lisi
Chief United States District Judge
July 26, 2012