## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

LOUIS PAOLINO and
MARIE ISSA,
   Plaintiffs,


   v.          C.A. No. 12-039-ML


JF REALTY, JOSEPH I. FERREIRA,
ROBERT YABROUDY, LKQ ROUTE 16
USED AUTO PARTS, INC., DBA
ADVANCED AUTO RECYCLING,
JOSEPH I. FERREIRA, TRUSTEE OF
THE JOSEPH I. FERREIRA TRUST,
   Defendants.


### MEMORANDUM AND ORDER

   The plaintiffs in this case, Louis Paolino and Marie Issa (the "Plaintiffs"), are the current owners[1] of a five-acre parcel of land adjacent to a thirty-nine-acre property (the "Property") owned by JF Realty, LLC (together with all other named defendants, the "Defendants"), of which Joseph I. Ferreira ("Ferreira") is the only member. Ferreira acquired the Property in 1983. Since 1984, the Property has been used to operate an automobile salvage and recycling business and is currently leased to LKQ Route 16 Used Auto Parts, Inc. for that purpose.

   According to the one-count complaint (the "Complaint"), the

_____

[1]

  The Plaintiffs purchased the land from LM Nursing Services (of which they are the officers and directors) in 1998; LM Nursing Services acquired the property in 1985.

1

Plaintiffs allege that the Defendants are in continuing violation of the Clean Water Act ("CWA"), 33 U.S.C. § 1251 *et seq.*, because "they do not have a valid RIPDES [Rhode Island Pollutant Discharge Elimination System] permit in the name of the actual owner and operator of the Property; and (2) they are continually discharging pollutants into United States waters at levels in excess of state water quality standards, federal effluent limitations, and other restrictions imposed by their RIPDES permit." Paolino v. JF Realty, LLC, 710 F.3d 31, 35 (1st Cir.2013). The Plaintiffs seek, *inter alia*, a permanent injunction enjoining the Defendants from discharging pollutants from the Property; civil penalties for each alleged violation; remediation of the alleged damage done to the Plaintiffs' property; and the redirection of an intermittent stream onto the Property. Complaint (Docket # 1).

The matter is before the Court on the Plaintiffs' motion for recusal pursuant to 28 U.S.C. §455(a)[2] and 28 U.S.C. § 455(b)(1)[3]. The Plaintiffs suggest that a reasonable person might conclude that

---

[2]
Subsection 455(a) provides:
Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

[3]
Subsection 455(b)(1) provides, in pertinent part:
He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(1) the Court has treated the Plaintiffs and Defendants and their attorneys differently; and (2) the Court has demonstrated favoritism of Defendants' attorney Robert C. Corrente ("Attorney Corrente"). Pltfs' Mot. ¶ 1 (Docket # 21).

## I. Factual Background and Procedural History

The underlying facts of this case and its somewhat lengthy procedural path have been described, in some detail, in the orders issued by this court and in the opinion of the First Circuit Court of Appeals, in which the First Circuit reversed, in part, this Court's dismissal of the case and remanded the case to this Court for further proceedings. Paolino v. JF Realty, LLC, 710 F.3d at 34; Paolino v. J.F. Realty, LLC, C.A. No. 12-039-ML, 2012 WL 3061594 (D.R.I. Jul. 26, 2012); LM Nursing Service, Inc. v. Ferreira, No. 09-cv-413-SJM-DLM, 2011 WL 1222894 (D.R.I. Mar. 30, 2011).

The Plaintiffs first brought suit against the Defendants in Rhode Island state court in 2006. After the Plaintiffs amended their complaint to include various federal environmental statutes, the Defendants removed the case to this Court in September 2009. The Defendants filed a motion to dismiss the case, the resolution of which was undertaken by Chief Judge McAuliffe of the United States District Court of the District of New Hampshire. In March 2011, the federal claims were dismissed without prejudice for lack of proper notice and the state claims were remanded to the Rhode Island Superior Court. LM Nursing Service, Inc. v. Ferreira, No.

3

09-cv-413-SJM-DLM, 2011 WL 1222894 (D.R.I. Mar. 30, 2011)(the "March 30, 2011 Order"). No appeal was taken from the March 30, 2011 Order.

In June 2011, the Plaintiffs filed a new Complaint (C.A. No. 11-228-ML) in this Court, asserting claims under the CWA and for trespass. Plaintiffs' motion for a TRO was denied. In the course of a subsequent preliminary injunction hearing, the Court raised the issue of subject-matter jurisdiction, based on the lack of Plaintiffs' full contact information on the most recent pre-litigation notice. One week after that hearing, the parties filed a stipulation of dismissal without prejudice.

On January 20, 2012, the Plaintiffs filed the most recent Complaint, in which they allege violations of the CWA. The Defendants responded with a motion to dismiss the Complaint for defective pre-suit notice and for defective service on Defendant Robert Yabroudy ("Yabroudy"). On this occasion, the Defendants sought dismissal of the case with prejudice for the Plaintiffs' alleged repeated failure to comply with mandatory prerequisites under the CWA.

On July 26, 2012, this Court granted the Defendants' motion and dismissed the case with prejudice. Paolino v. J.F. Realty, LLC, C.A. No. 12-039-ML, 2012 WL 3061594 (D.R.I. Jul. 26, 2012). The Plaintiff appealed the dismissal, which was reversed, in part, by the First Circuit Court of Appeals on March 13, 2013. The Court's

dismissal of any claims against Yabroudy for defective service was affirmed. The case was remanded to this Court for further proceedings. Paolino v. JF Realty, LLC, 710 F.3d at 34. Pursuant to Local Rule LR Gen. 105(b), the case was re-assigned to the undersigned.

On May 31, 2013, the Plaintiffs filed a motion for recusal (Docket # 21); a memorandum of law in support of the motion (Docket # 21-2); an affidavit of Defendant's lead counsel, Michael J. O'Neill ("Attorney O'Neill"), together with copies of two articles printed from news websites (Docket # 21-1, # 22-1); and an affidavit of Plaintiff Louis Paolino (Docket # 21-3, # 22). On June 3, 2013, the Court conducted a Rule 16 conference with counsel of record and issued a pretrial scheduling order specifying deadlines for discovery and for the filing of dispositive motions. (Docket # 23). Defendants' counsel filed a response in opposition to Plaintiffs' motion for recusal on June 12, 2013. (Docket # 24).

## II. Standard of Review

### A.   28 U.S.C. § 455(a)

Pursuant to 28 U.S.C. § 455(a), "[a]ny justice, judge or magistrate of the United States shall disqualify [herself] in any proceeding in which [her] impartiality might reasonably be questioned." 28 U.S.C. § 455(a); In re Bulger, 710 F.3d 42, 45 (1st Cir.2013)(referring to Susan B. Hoekema, *Questioning the Impartiality of Judges: Disqualifying Federal District Court Judges*

*Under 28 U.S.C. § 455(a)*, 60 Temp. L.Q. 697, 708 (1987) ("[S]ection 455(a) suggests that it requires disqualification for the appearance of bias.")); <u>Blizard v. Frechette</u>, 601 F.2d 1217, 1220-21 (1st Cir.1979)("In essence, section 455(a) allows a judge to disqualify [herself] if a reasonable man would have factual grounds to doubt the impartiality of the court."); <u>see also</u> <u>Home Placement Service, Inc., v. Providence Journal Co.</u>, 739 F.2d 671, 674 (1st Cir.1984)(listing First Circuit cases and noting that "[o]ther circuits have also interpreted 28 U.S.C. § 455(a) as establishing an objective-reasonable person standard.").

The provision "seeks to balance two competing policy considerations: first, that 'courts must not only be, but seem to be, free of bias or prejudice,' <u>In re United States</u>, 158 F.3d 26, 30 (1st Cir.1998) (quoting <u>In re United States</u>, 666 F.2d 690, 694 (1st Cir.1981)); and second, the fear that recusal on demand would provide litigants with a veto against unwanted judges." <u>In re Boston's Children First</u>, 244 F.3d 164, 167 (1st Cir.2001).

In "determining whether a judge's impartiality might reasonably be questioned," the First Circuit follows the standard set forth in <u>United States v. Cowden</u>, 545 F.2d 257, 265 (1st Cir.1976), *cert. denied*, 430 U.S. 909, 97 S.Ct. 1181, 51 L.Ed.2d 585 (1977):

> [w]hether the charge of lack of impartiality is grounded
> on facts that would create a reasonable doubt concerning
> the judge's impartiality, not in the mind of the judge
> himself or even necessarily in the mind of the litigant

filing the motion under 28 U.S.C. § 455, but rather in the mind of the reasonable man." <u>United States v. Voccola</u>, 99 F.3d 37, 42 (1st Cir.1996).

Disqualification is considered appropriate "only when the charge is supported by a factual basis, and when the facts asserted 'provide what an objective, knowledgeable member of the public would find to be a reasonable basis for doubting the judge's impartiality.'" <u>In re Boston Children First</u>, 244 F.3d at 167 (quoting <u>In re United States</u>, 666 F.2d 690, 695 (1st Cir.1981)). "To ensure that the proceedings appear to the public to be impartial and hence worthy of their confidence, the situation must be viewed through the eyes of the objective person." <u>In re United States</u>, 666 F.2d at 694. "[U]nless a party can establish a reasonable factual basis to doubt a judge's impartiality 'by some kind of probative evidence,' then a judge *must* hear a case as assigned." <u>United States v. Voccola</u>, 99 F.3d at 42 (quoting <u>Blizard</u>, 601 F.2d at 1221). The Court is "not compelled automatically to accept as true the allegations made by the party seeking recusal." <u>In re Martinez-Catala</u>, 129 F.3d 213, 220 (1st Cir.1997). Rather, "[t]o the extent that facts are in dispute, factual determinations are made by the judge whose recusal is in question, and the same judge also decides whether the facts trigger disqualification, subject always to review on appeal, normally for abuse of discretion." <u>Id.</u>

District courts are allowed "'a range of discretion' in the

7

decision not to recuse." <u>In re Boston's Children First</u>, 244 F.3d at 167 (citing <u>In re United States</u>, 666 F.2d at 695). Such discretion is to be exercised with the understanding that, "'if the question of whether § 455(a) requires disqualification is a close one, the balance tips in favor of recusal.'" <u>In re Boston's Children First</u>, 244 F.3d at 167 (quoting <u>Nichols v. Alley</u>, 71 F.3d 347, 352 (10th Cir.1995)). However, "'[t]here is as much obligation upon a judge not to recuse himself when there is no occasion as there is for him to do so when there is,'" <u>Brody v. President & Fellows of Harvard College</u>, 664 F.2d 10, 12 (1st Cir.1981))(quoting <u>In re Union Leader Corp.</u>, 292 F.2d 381, 391 (1st Cir.1961)). Therefore, "a judge once having drawn a case should not recuse himself on a unsupported, irrational, or highly tenuous speculation..." <u>In re United States</u>, 666 F.2d at 694. In other words, "judges are not to recuse themselves lightly under § 455(a)." <u>United States v. Snyder</u>, 235 F.3d 42, 45 (1st Cir.2000)(noting that "the unnecessary transfer of a case from one judge to another is inherently inefficient and delays the administration of justice.")(citing H.R.Rep. No. 93-1453, at 5 (1974), reprinted in 1974 U.S.C.C.A.N. 6351, 6355 ("[Section 455(a)] should not be used by judges to avoid sitting on difficult or controversial cases.")).

B.   28 U.S.C. 455(b)

Under 28 U.S.C. § 455(b), a judge should recuse herself in circumstances where, *inter alia*, she "has personal bias or

prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b); In re Grand Jury Proceedings, 875 F.2d 927, 932 n. 5 (1st Cir.1989); El Fenix de Puerto Rico v. M/Y Johanny, 36 F.3d 136, 140 n. 4 (1st Cir. 1994) (Section 455(b) "requires recusal where the judge has 'personal knowledge of disputed evidentiary facts.'"). Disqualification pursuant to § 455(b)(1) requires determination of "bias/prejudice *in fact*." United States v. Chantal, 902 F.2d 1018, 1023 (1st Cir.1990)(emphasis in original). "The bias or knowledge necessary to disqualify a judge must be "'personal and it must stem from an extra-judicial source. Adverse attitudes toward a party or witness formed on the basis of the evidence before the court do not constitute disqualifying bias and prejudice.'" In re Grand Jury Proceedings, 875 F.2d at 932 (quoting In re Cooper, 821 F.2d 833, 838 (1st Cir.1987)) (citation and emphases omitted). Put another way, "disqualification for personal bias or prejudice necessitates a showing that the alleged bias or prejudice be both personal and extrajudicial:'Facts learned by a judge while acting in his judicial capacity cannot serve as a basis for disqualification on account of personal bias.'" United States v. Giorgi, 840 F.2d 1022, 1035 (1st Cir.1988)(quoting United States v. Kelley, 712 F.2d 884, 889 (1st Cir. 1983) (citations omitted)); United States v. Mirkin, 649 F.2d 78, 81 (1st Cir.1981)(noting that "[t]he alleged bias and prejudice to be disqualifying must stem from an extrajudicial

source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case."). (citing <u>United States v. Grinnell Corp.</u>, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966)(quoting <u>Berger v. United States</u>, 255 U.S. 22, 31, 41 S.Ct. 230, 232, 65 L.Ed. 481 (1921)).

### III. Motion for Recusal

The Plaintiffs' request that this Court recuse itself pursuant to 28 U.S.C. §455(a) and §455(b) is based on five separate grounds. First, the Plaintiffs assert that the Court "suggested a settlement favorable to the Defendants." Pltfs. Mem. 1. Second, the Plaintiffs state that the Court raised, *sua sponte*, the question of defective notice during the preliminary injunction hearing in the second case brought by the Plaintiffs. <u>Id.</u> Third, the Plaintiffs point out that this Court's dismissal of the case - on which no hearing was conducted prior to issuance of the Court's order - was reversed, in part, by the First Circuit. <u>Id.</u> Fourth, the Plaintiffs suggest that the Court included information regarding the state court case that was not in the record. <u>Id.</u> Fifth, the Plaintiffs note that, according to reports by online news sources, this Court arrived at different conclusions in a criminal case (in which Attorney Corrente represented the defendant) than a different district court judge who presided over a civil case arising from the same underlying facts (from which Attorney Corrente withdrew early on). <u>Id.</u>

In response, the Defendants address only Plaintiffs' third and fifth reason. Defs.' Obj. 3 (Docket # 24). The Defendants submit that neither prior adverse rulings against the Plaintiffs, nor the First Circuit's reversal, in part, of this Court's dismissal of the case constitute probative evidence of bias or prejudice. Id. The Defendants also note that, in the criminal case over which this Court presided, the complaining witness's testimony was contested and evidence disputing her version of the events was presented. By contrast, the same witness's subsequent civil trial testimony before a different judge was uncontested and no evidence was presented to dispute it. Id.

**IV. Discussion**

A. Suggestion of Settlement

On June 21, 2011, the parties met before this Court on Plaintiffs' motion for TRO. Although a court reporter was present throughout the in-chambers hearing, the hearing was not formally recorded; neither party requested that a formal record be made. The Court, after obtaining some background information on the case and listening to the parties' respective arguments, denied the motion for TRO. The Court then advised the parties that it would schedule a preliminary injunction hearing after the Defendants had filed a responsive pleading. At the conclusion of the conference, the Court inquired, as it does in every civil case, whether the parties had taken an opportunity to talk to one another. The Court suggested

11

that the parties consider a practical approach before getting too far into litigating the case. Based on the parties' representation that the alleged contamination and trespass affected primarily a small portion of the Plaintiffs' five-acre property, the Court asked Plaintiffs' counsel whether Plaintiffs had considered quit-claiming that small portion to the Defendants, thus ridding itself of the polluted and/or encroached upon property. There was no suggestion that Plaintiffs should simply gift their property to the Defendants without receiving consideration.

None of these facts should lead a reasonable person to question this Court's impartiality. The hearing was, as many TRO hearings are, informal and not on the record. The Court, after addressing the Plaintiffs' motion, encouraged the parties to engage in settlement discussions and offered but one possible solution for consideration. Although Plaintiff Louis Paolino asserts in his affidavit that he considered the Court's suggestion totally unreasonable and unacceptable, Paolino Aff. 1 (Docket # 21-3), the § 455(a) standard to determine impartiality is an objective one and such an assertion does not constitute factual grounds to doubt the impartiality of this Court.

B. The Defective Notice

Prior to the hearing on Plaintiffs' motion for preliminary injunction, the Defendants asserted in their answer to the Complaint that Plaintiffs' pre-suit notice was not valid, <u>see</u>

Defs.' Answer ¶3 (C.A. No. 11-228-ML, Docket # 9), and that the Plaintiffs had failed to comply with the prior notice requirements of the CWA. <u>Id.</u> at 9, ¶1.

At the beginning of the August 11, 2011 hearing on the Plaintiffs' motion, the Court advised Plaintiffs' counsel that Defendants had again raised the lack of notice. The Court inquired whether the Plaintiffs' addresses and phone numbers were listed anywhere on the March 18, 2011 notification letter. The Court also noted that the March 30, 2011 order - by which Plaintiffs' previous federal claims were dismissed for deficient notice - indicated that strict compliance with notice requirements was mandatory. <u>See</u> <u>LM Nursing Service, Inc. v. Ferreira</u>, No. 09-cv-413-SJM-DLM, 2011 WL 1222894 at *8. The Court requested that Plaintiffs' counsel brief the question of whether or not adequate and proper notice in accordance with CWA requirements had been made and Plaintiffs' counsel agreed, requesting two weeks for preparation. No such brief was filed. Instead, on August 18, 2011, one week after the hearing, the parties filed a stipulation of dismissal without prejudice. (C.A. No. 11-228-ML, Docket # 13).

As the Court explained on August 11, 2011, it addressed the question of sufficiency of the pre-suit notice at the outset of the hearing because the Defendants had raised that issue as a defense and because the March 30, 2011 order pointed out that "[P]laintiffs' (as distinct from their counsel's) full contact

information, including their names, addresses, and telephone numbers" was required. See LM Nursing Service, Inc. v. Ferreira, No. 09-cv-413-SJM-DLM, 2011 WL 1222894 at *8. The Court also noted that it would have no subject-matter jurisdiction over the case, if the Plaintiffs had not properly complied with the CWA's notification provision. Because, without first establishing jurisdiction of this Court, Plaintiffs' claims would have to be dismissed, the Court explained that it would not proceed with the hearing until it was satisfied that the case was properly before it. The Court also stated that it did not wish to waste everybody's time and it afforded an opportunity to Plaintiffs to submit a brief addressing the question of whether the jurisdictional pre-requisite had been met. No further briefs were submitted; instead, the parties agreed to dismiss the case without prejudice.

Although it is understandable that Plaintiff Louis Paolino was, as he states in his affidavit, surprised and upset that the preliminary injunction hearing did not take place, nothing occurred in the proceedings that would lead a reasonable person to doubt the impartiality of this Court. The question of insufficiency of notice had been raised by the Defendants; the CWA's notice requirements had been explained, in some detail, by the March 30, 2011 Order; and it was appropriate for this Court to raise the question of subject-matter jurisdiction before proceeding further. See Fed. R. Civ. P. 12(h)(3)("If the Court determines at any time that it lacks

subject-matter jurisdiction, the court must dismiss the action.")

C. Dismissal of the Complaint

At the outset, the Court notes that it is well established that "[a] court sometimes may decide factual challenges under Rule 12(b)(1) without convening an evidentiary hearing." Valentin v. Hospital Bella Vista, 254 F.3d 358, 365 (1st Cir.2001)(citing Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir.2000)). In this case, the Court was well familiar with the facts and legal issues relevant to the Defendants' motion to dismiss; the Court also had the benefit of the parties' well-reasoned memoranda and the March 30, 2011 Order that addressed the question of adequacy of notice. Moreover, the Court notes that both parties requested a hearing; therefore, the Court's determination that no hearing was necessary cannot be construed to indicate partiality with respect to the Defendants.

It is correct that the First Circuit Court of Appeals disagreed with this Court's ultimate conclusion regarding the adequacy of Plaintiffs' notice. As the First Circuit stated in the opening sentence of its opinion, "[t]his appeal presents an issue of first impression in the First Circuit as to the standard for measuring the sufficiency of the mandatory pre-suit notice..." Paolino v. JF Realty, LLC, 710 F.3d at 32 (emphasis added). In concluding that the requisite requirements had been met by the Plaintiffs, the First Circuit established and clarified that

15

standard and remanded the case to this Court for further proceedings. The First Circuit also affirmed this Court's conclusion that service of pre-suit notice on Defendant Yabroudy was defective and that the CWA claims against Yabroudy should be dismissed. Id. at 38.

In sum, both parties had a full and fair opportunity to present relevant facts and arguments in their submissions. The dismissal of the Plaintiffs' claims by this Court, although it was subsequently reversed, in part, was not contrary to established law in this Circuit. As such, neither the proceeding itself, nor the conclusion by this Court, would raise doubt in a reasonable person as to this Court's impartiality.

D. State Court Proceedings

This case originated in Rhode Island state court. It was removed by the Defendants to this Court after the Plaintiffs added claims under federal law. C.A. No. 09-413-ML. Following dismissal of the federal claims, all state law claims were remanded to Rhode Island state court. LM Nursing Service, Inc. v. Ferreira, No. 09-cv-413-SJM-DLM, 2011 WL 1222894. When the Plaintiffs renewed their federal claims in this Court, they also submitted a Plaintiff's Notice of Related Actions or Proceedings, alerting the Court that state law claims of negligence, nuisance, and trespass remained pending in Providence Superior Court, Civil Action No. 2006-5973. Pltfs' Notice (C.A. No. 11-228-ML, Docket # 2).

At the hearing on Plaintiffs' motion for TRO on June 21, 2011, the parties informed the Court that motions for summary judgment in the state law claims were scheduled for argument on July 12, 2011 and that a related matter was still pending before the Rhode Island Department of Environmental Management ("RIDEM").[4] In the course of the TRO hearing, the Court instructed the parties to notify the Court of any rulings issued in the Superior Court or by RIDEM.

Subsequent pleadings submitted by the Defendants included information regarding the progress of the state case. The Defendants' June 29, 2011 answer in C.A. No. 11-228-ML asserted that Plaintiffs were precluded from maintaining a trespass claim in this case because they had a prior action pending in the Providence County Superior Court. Answer at 9, ¶6 (C.A. No. 11-228-ML, Docket # 9). According to the Defendant's Motion to dismiss, all discovery in the state case was complete by February 14, 2012 and the action had been placed on the trial calendar. Defs.' Mem. at 3 (Docket #6). In their March 12, 2012 reply, the Defendants stated that the parties were scheduled to try the state court action on April 30, 2012. Reply at 4 (Docket #9). Shortly before the issuance of this Court's dismissal of the case, the calendar clerk was notified of the outcome in the state court case via e-mail by a paralegal in

---

[4]
At the TRO hearing, the Plaintiffs indicated that, although they were not parties in the RIDEM proceeding, they followed its progress.

Attorney Corrente's law firm; the clerk appropriately forwarded that information to the Court.

The Plaintiffs' argument with respect to this information - which was included as a footnote in the Court's Memorandum and Order from July 26, 2012 - is not fully developed; the Plaintiffs merely point out that the information was not in the record of this case. Although, perhaps, out of an abundance of caution, Plaintiffs' counsel should have been cc'ed on the e-mail, the communication does not provide a ground for reasonably questioning the impartiality of this Court under 28 U.S.C. § 455(a), nor does it constitute "personal knowledge of disputed evidentiary facts concerning the proceedings." 28 U.S.C. § 455(b).

Both parties were instructed at the TRO hearing to provide this Court with updates in the state case, particularly in light of the parties' dispute whether the Complaint asserted trespass claims identical to those raised in state court. The accuracy of the information is not disputed by the Plaintiffs; the outcome of the state suit is a matter of public record; and the information was certainly known to the Plaintiffs. The reference to the state case was not included in the Court's analysis and was relegated to a footnote. In sum, the information was not personal, and it did not stem from an extra-judicial source. See In re Grand Jury Proceedings, 875 F.2d at 932 n. 5 (quoting In re Cooper, 821 F.2d at 838). Rather, the Court, in its judicial capacity, was informed

of the state court proceeding, as it had previously requested of both parties; therefore, the information "cannot serve as a basis for disqualification on account of personal bias."  See United States v. Giorgi, 840 F.2d at 1035.

E. The News Stories

Plaintiff Louis Paolino asserts that he has read news stories in which it was stated that this Court acquitted a defendant represented by Attorney Corrente in a jury-waived criminal trial after finding the complaining witness not credible.[5]  According to those reports, in a subsequent civil trial arising from the same factual background - in which Attorney Corrente withdrew his appearance - a different district court judge found the same complaining witness "highly credible." Paolino Aff.  ¶8 (Docket # 21-3). Plaintiffs now argue that such "opposite conclusions as to credibility by two judges ... is extremely unusual," and may lead a reasonable person to question this Court's impartiality and whether the Court has a bias in favor of Attorney Corrente. Pltfs' Mem. at 4-5 (Docket # 21-2).

The Court disagrees. The trial over which this Court presided was a criminal matter, which implicates a considerably higher burden of proof that must be met by the prosecution. In the

---

[5]

Attached to Attorney O'Neill's affidavit are a 08/05/11 print-out from www.foxnews.com and a five-sentence "Breaking News" report from http://news.providencejournal.com. (Docket # 21-1, Pages 6, 7, 9 of 9.)

criminal case, the complaining witness was rigorously cross-examined and evidence was submitted by the defendant that directly challenged the complaining witness's version of the events. By contrast, in the subsequent civil trial, the plaintiff/complaining witness bore a substantially lighter burden of proof. Moreover, the defendant in the civil case elected not to appear. Following entry of default against the defendant regarding liability, the complaining witness's testimony and the evidence that was submitted during an evidentiary hearing regarding damages remained entirely unchallenged.

Under those circumstances, it is not at all surprising that conclusions as to the complaining witness's credibility varied. Therefore, the different findings by two different judges in two different types of proceedings offer no grounds for a reasonable person to doubt the impartiality of this Court.

Finally, Plaintiffs' counsel appears to express concern that, at the TRO hearing, Attorney Corrente was addressed by the Court by his first name, whereas Attorney O'Neill was addressed by his surname. Aff. of Attorney O'Neill at 2, ¶ 4 (Docket #21-1). The Court assures Plaintiffs' counsel that the different form of address is not an indication of preference or bias; it merely reflects that the Court had never before met Attorney O'Neill.

### Conclusion

For the reasons stated herein, the Plaintiffs' motion for

recusal is DENIED.

SO ORDERED.

/s/ Mary M. Lisi

Mary M. Lisi
Chief United States District Judge

June 25, 2013