# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

LOUIS PAOLINO and
MARIE ISSA,
      Plaintiffs,

      v.                    C.A. No. 12-039-ML

JF REALTY, LLC, JOSEPH I. FERREIRA,
ROBERT YABROUDY, LKQ ROUTE 16
USED AUTO PARTS, INC., DBA
ADVANCED AUTO RECYCLING,
JOSEPH I. FERREIRA TRUST,
      Defendants.

## ORDER AND MEMORANDUM

The case is before the Court on the remaining[1] defendants' motion for attorney's fees pursuant to Fed. R. Civ. P. 54(d)(2) and 33 U.S.C. § 1365(d). The pertinent facts underlying this litigation and its lengthy procedural history have been repeatedly detailed in various opinions and orders, most recently in the Memorandum of Decision issued by this Court on November 19, 2014, after the Court conducted a trial without a jury in August and September of that year. Paolino v. JF Realty, LLC, C.A. No. 12-039-ML, 2014 WL 6485842(D.R.I. Nov. 19, 2014). See also Paolino v. JF Realty, 710 F.3d 31, 35-37 (1st Cir. 2013); Paolino v. JF Realty, C.A. No. 12-39-ML, 2012 WL 3061594 (D.R.I. July 26, 2012); LM Nursing Service, Inc. v. Ferreira, No. 09-cv-413-SJM-DLM, 2011 WL 1222894 (D.R.I. Mar. 30, 2011).

---

[1]    Robert Yabroudy is no longer a party in this case.

1

## I. Factual Background and Procedural Posture

To summarize, the plaintiffs, Louis Paolino ("Paolino") and Marie Issa (together with Paolino, the "Plaintiffs") brought a series of complaints[2] against JF Realty, LLC ("JF Realty") and the other named defendants (together with JF Realty, the "Defendants") related to a large parcel of property (the "Property") owned by JF Realty, which is located adjacent to the Plaintiffs' own, smaller property (the "Paolino Property"). The Property has been operated as an automotive recycling business since 1984 and, like the Paolino Property, it has a long and complicated environmental history that predates ownership of the respective properties by either party.

Since 2006, the Plaintiffs have pursued claims against the Defendants in both state and federal court under various legal theories, including trespass, and claims under the Clean Water Act ("CWA"), 33 U.S.C. § 1251 *et seq.* (1972). The most recent complaint before this Court, limited to a one-count CWA claim,

---

[2]

As noted in the November 19, 2014 Memorandum of Decision, Paolino, in addition to filing separate suits in this Court and Rhode Island state court, also made related complaints to RIDEM, EPA, the local police department, the U.S. Attorney's Office, and other agencies or entities. Paolino v. JF Realty, LLC, 2014 WL 6485842(D.R.I. Nov. 19, 2014). The complaints started after Paolino unsuccessfully attempted to sell a portion of his property to Joseph Ferreira. As recounted by Yabroudy at trial, after Yabroudy "vehemently" declined the offer, Paolino said: "I think Mr. Ferreira will regret it."  (Trial Transcript VII, 43:1-13.)

was filed on January 20, 2012. The gravamen of Plaintiffs' CWA claim is that contaminated stormwater runoff from the Property is being discharged into United States waters. The Plaintiffs further alleged that the improper treatment of stormwater led to contamination on the Paolino Property, and that the Defendants lacked a valid RIPDES [Rhode Island Pollutant Discharge Elimination System] permit.[3] In addition to injunctive relief, the Plaintiffs sought an order requiring the Defendants to pay civil penalties of $32,500 to $37,500 per day for each alleged violation of the CWA.

The parties presented evidence and the testimony of thirteen witnesses in the course of a seven-day bench trial, after which both sides filed extensive post-trial memoranda. On November 19, 2014, this Court issued a Memorandum of Decision in which it concluded, after considering and evaluating the submitted evidence and testimony, that the Plaintiffs had failed to meet their burden of proof and that the Defendants had prevailed.

On December 3, 2014, the Defendants filed a motion for attorney's fees pursuant to Fed. R. Civ. P. 54(d)(2) and 33 U.S.C. §1365(d). In support of their motion, the Defendants

---

[3]

Although it was undisputed that a RIPDES permit was issued for the Property, the Plaintiffs alleged that the permit did not reflect a subsequent change in ownership between different, but related, entities controlled by the Defendants.

assert that (1) the Plaintiffs proceeded to trial without any credible evidence to support their claims; (2) Paolino[4] himself conceded that RIDEM [Rhode Island Department of Environmental Management] had investigated his numerous complaints about the Property and had found them to be without merit; and (3) neither EPA nor RIDEM decided to intervene in this case after receiving Plaintiffs' notice of intent to sue.[5]

---

[4]

The Defendants also point out that Paolino's statements at trial cast some doubt on the reliability of his testimony and that the Plaintiffs began raising complaints and initiating law suits only after their offer to sell the Paolino Property to the Defendants had been declined.

[5]

The Defendants supported their motion with an affidavit by Defendants' counsel, together with a summary of billing hours and applicable hourly rates. (Dkt. No. 109-1). Counsel also offered to provide, but did not include, copies of billing statements with a narrative of the work performed. Defendants further submitted an affidavit from a local attorney as to the fairness and reasonableness of the billing rates. (Dkt. No. 109-2).

On December 18, 2014, the Court issued an Order directing Defendants to provide copies of the relevant billing statements for *in camera* review, limiting such statements to work performed by Defendants' counsel in the instant case, filed in 2012. (Dkt. No. 111).

In response, the Plaintiffs filed a motion requesting the Court to amend its December 18, 2014 order and require the Defendants to provide the Plaintiffs with copies of the billing statements. (Dkt. No. 112-1). Defendants raised no objection thereto; they provided copies of the billing statements to the Court on January 14, 2015 and provided the same statements to Plaintiffs.

The Court directed Plaintiffs to submit a response to the Defendants' submissions, which was received on February 9, 2015 (Dkt. No. 113)

On December 17, 2014, the Plaintiffs filed an objection to the Defendants' motion for attorney's fees. The Plaintiffs took the position that, as long as reasonable minds could differ as to the merits of their ultimately unsuccessful action, the action was not "frivolous or unreasonable" and, accordingly, an award of fees and costs was not warranted. Pltfs.' Mem. at 1 (Dkt. No. 110-1) (citing Simsbury-Avon Pres. Soc'y, LLC v. Metacon Gun Club, Inc., *not reported in F. Supp. 2d*, 2010 WL 1286812 (D.Conn, March 29, 2010)). The Plaintiffs further suggested that this Court "deferred to the position of [RIDEM] on all matters," but they maintained that the position of a regulatory agency was not determinative of the question of frivolousness. Pltfs.' Mem. at 1. According to the Plaintiffs, RIDEM "has a long history of special, favorable treatment of Defendants," and "some RIDEM personnel have effectively acted as advocates for Defendants in squelching Plaintiffs' legitimate complaints." Id. at 33.

The Plaintiffs also pointed out that, in their motion for attorney's fees, the Defendants sought fees related not only to this litigation, but to the two earlier suits the Plaintiffs had pursued against the Defendants in this Court.

In support of their objection to the Defendants' motion, the Plaintiffs offered their own interpretation of the testimony and evidence presented at trial. In addition, the Plaintiffs

submitted a number of exhibits that included, *inter alia*, (1) an affidavit of Paolino that seeks to establish facts that were not admitted at trial, and which appear to be based on unsupported hearsay from an individual who did not testify; (2) a 1995 state court judgment involving Ferreira that appears to have no connection to the instant case; and (3) an affidavit dated June 30, 2014 by Plaintiffs' expert witness, Dr. Roseen, which describes, in some detail, Dr. Roseen's observations during an April 28, 2014 site visit to the Property and his conclusions derived therefrom. As previously explained in open Court and set forth in the November 19, 2014 Memorandum of Decision, such testimony was expressly excluded at trial because the information was not disclosed to the Defendants within the deadline imposed by the Court.

Plaintiffs' objections to the Defendants' request for attorney's fees are numerous. To summarize, the Plaintiffs assert that (1) an award of attorneys' fees is not justified on the merits; (2) Defendants failed to satisfy the requirements of Local Rule 54.1 and/or the Court's December 18, 2014 order; and (3) Defendants have intentionally violated that order. Pltfs.' Response at 1 (Dkt. No. 113). In addition, the Plaintiffs challenge the adequacy of the information provided by the Defendants in support of their motion for attorney's fees. It is

noted that Defendants' additional submission of detailed billing information pursuant to the Court's December 18, 2014 order served to supplement the initial motion, which did include the requisite affidavits. Morever, the billing statements[6] enabled the Plaintiffs to identify, with some specificity, any submitted charges they considered inappropriate and the submitted documentation allowed for a thorough review by the Court.

## II. Standard of Review

The general rule in the United States—absent statutory or contract provisions stating otherwise—requires litigants to pay their own attorney's fees. <u>Christiansburg Garment Co. v. E.E.O.C.</u>, 434 U.S. 412, 415, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978) (citing <u>Alyeska Pipeline Co. v. Wilderness Society</u>, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)). Although many statutes limit awards to prevailing plaintiffs, the CWA authorizes the award of attorney's fees to either plaintiffs or defendants. Section 1365(d) of the CWA, applicable to citizen suits, provides that "[t]he court, in issuing any final order in any action brought pursuant to this section, may award costs of litigation (including reasonable attorney and expert witness fees) to <u>any</u>

---

[6]   Plaintiffs assert that the January 14, 2015 submission "does not include any billing statements." To the extent Plaintiffs refer to actual invoices from Defendants' attorneys to their clients, such invoices were not requested by the Court.

prevailing or substantially prevailing party, whenever the court determines such award is appropriate." 33 U.S.C. § 1365(d)(emphasis added). The litigation cost provision in the CWA does not set forth a standard under which requests for attorney's fees are to be considered, nor does it expressly distinguish between the two sides. However, case law indicates that the burden on a prevailing defendant is higher than that imposed on a prevailing plaintiff, reflecting "the general policy set forth by Congress to encourage legitimate private citizen lawsuits in furtherance of policies that Congress considers 'of the highest priority.'" Atlantic States Legal Found., Inc. v. Onondaga Dept. of Drainage and Sanitation, 899 F. Supp. 84, 87 (N.D.N Y. 1995)(quoting Newman v. Piggie Park Enter., Inc., 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968)).

Accordingly, a prevailing defendant in a CWA action may only recover attorney's fees if the Court finds that a plaintiff's claims are "frivolous, unreasonable, or groundless," or if the Court determines that "the plaintiff continued to litigate after [the litigation] clearly became so." Christiansburg Garment Co. v. E.E.O.C., 434 U.S. 412, 422, 98 S.Ct. 694. See also, Simsbury-Avon Pres. Soc'y, LLC v. Metacon Gun Club, Inc., 2010 WL 1286812 at *1 n. 2 (listing cases addressing the applicability of the Christiansburg standard to defendants' attorney-fee motions under

CWA) (D. Conn., March 29, 2010)).

Moreover, a court considering a prevailing defendant's request for attorney's fees is cautioned to "resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." Id. at 421-422, 98 S.Ct. 694. However, it is not necessary for this Court to make a determination that the plaintiff brought the suit in "subjective bad faith." Lamboy-Ortiz v. Ortiz-Velez, 630 F.3d 228, 236 (1st Cir. 2010)(holding that "[a] prevailing defendant may be awarded fees only 'upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.'")(quoting Rosselló-González v. Acevedo-Vilá, 483 F.3d 1, 6 (1st Cir.2007) (quoting Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978)).

The award of attorney's fees to a defendant also requires the usual determination by the Court whether (1) the defendant is a "prevailing or substantially prevailing party;" and (2) the award of attorney's fees is "appropriate." A party prevails by obtaining an enforceable judgment (or comparable relief through a consent decree or settlement) that directly benefits that party at the time of judgment or settlement. Sierra Club v. City of

Little Rock, 351 F.3d 840, 845 (8th Cir. 2003)(citing Farrar v. Hobby, 506 U.S. 103, 111, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992)). The change in legal relationship between the parties must be "judicially sanctioned;" a voluntary change in the relationship between the parties as a result of a lawsuit is insufficient to trigger a shift in the general rule that parties pay their own fees. Sierra Club v. City of Little Rock, 351 F.3d at 845 (citing Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001)).

## III. Discussion

The Court is mindful of the importance that citizen suits under the CWA have in protecting public water resources against polluters, as well as the potential chilling effect a prevailing defendant's award may have on such litigation. See Sierra Club v. City of Colorado Springs, 2010 WL 3777230 at *2 (D. Colo., Sept. 21, 2010) (quoting Christiansburg Garment Co., 434 U.S. at 418, 98 S.Ct. 694 (noting that "'the plaintiff is the chosen instrument of Congress to vindicate a policy that Congress considered of the highest priority,'" and when the plaintiff prevails, he or she has proven that the defendant is a "'violator of federal law.'").

In this case, however, having presided over three iterations

of this litigation for more than eight years, and after reviewing the considerable evidence presented at trial and listening to the testimony of the parties, their expert witnesses, RIDEM staff, and several professional individuals involved in constructing the stormwater management system on the Property, the Court is compelled to conclude that the Plaintiffs do not belong to the category of citizen plaintiffs who should be shielded from assuming the cost of litigation that the Defendants were forced to bear.

As this Court has previously determined, the Plaintiffs have failed to meet their burden of establishing that the Defendants committed a violation of the CWA. That determination, on its own, is not sufficient to award attorney's fees to the Defendants under the <u>Christiansburg</u> standard. However, the circumstances of this latest round of litigation make it abundantly clear that the Plaintiffs continued to engage in a bitter quarrel with the Defendants long after the Defendants had taken appropriate and RIDEM-approved measures to address any legitimate concerns the Plaintiffs might have raised in the interest of protecting public water resources and long after it became apparent that the Plaintiffs' case was unsupportable.

The Plaintiffs brought the instant 2012 suit (their third federal action) against the Defendants <u>after</u> the Defendants had

installed a comprehensive stormwater management system—as required and approved by RIDEM—to address the Property's runoff problems and to bring the Property into compliance with the CWA and other applicable regulations. Prior to commencing this latest case, Paolino had been repeatedly informed by RIDEM that, with one exception[7], his complaints about the Property had no merit and that stormwater was not being discharged onto his property. Paolino was also generally kept apprised by RIDEM of developments on the Property and his many complaints generated several RIDEM site visits, a multi-media inspection, and extensive correspondence between RIDEM, EPA, and local authorities.

Accordingly, the Plaintiffs' continued insistence that RIDEM failed to exercise regulatory oversight of the Property, in light of the extensive record reflecting RIDEM's involvement with the Property, was not reasonable. Likewise, the Plaintiffs inexplicably refused to acknowledge the well-documented efforts made by RIDEM that caused the Defendants to alleviate environmental conditions on the Property.

Within months of commencing the latest round of litigation

---

[7] As noted in the Court's November 19, 2014 Memorandum of Decision, after investigating the discharge of turbid stormwater from the Property, RIDEM "issued a notice of violation [NOV] on March 2, 2010, which included an order to correct the violation and an administrative penalty for noncompliance." Paolino v. JF Realty, LLC, C.A. No. 12-039-ML, 2014 WL 6485842 at *8.

in this Court, the Plaintiffs, in their then pending state litigation against the Defendants, dismissed all claims against the Defendants with prejudice (with the exception of trespass claims). Included among the claims voluntarily dismissed were the claims brought under the CWA[8] in their parallel state court action. There, the Plaintiffs proceeded to trial solely on the trespass claim, on which the jury awarded only nominal damages. It is telling that, at the conclusion of that case, Paolino sought an injunction from the state court ordering the Defendants to "return the site to its previous condition prior to installation of the stormwater system." Ex. OO. The request was denied because the impact on the Paolino Property would have been *de minimis* and the cost of redirecting the discharge and returning the site to its previous condition would have been greatly disproportionate to any benefit to the Plaintiffs. Id. Paolino also sought to compel the Defendants to remove a portion of the storm water management system from the drainage channel located in front of both properties. Id. This request was also denied on the grounds that the encroachments on a small portion of the Paolino Property (of which he made admittedly no use and

---

[8]    As noted in the Court's November 19, 2014 Memorandum of Decision (Dkt. No. 108), the state court complaint referred to the "Federal Water Pollution Act," which has been commonly known as the CWA, following amendments in 1972. Paolino v. JF Realty, LLC, C.A. No. 12-039-ML, 2014 WL 6485842 at *19 n. 13.

which may have been located, at least in part, in the community's right-of-way) were *de minimis* and the cost of removing the encroachments would have been "greatly disproportionate to the benefit to Plaintiffs." Id.

In other words, after bringing a federal citizen suit under the CWA against the Defendants, and after the installation of a million-dollar, state-of-the-art stormwater management system designed for, and effective in, alleviating pollution problems associated with stormwater run-off, the Plaintiffs demanded that the site be returned to its previous condition and that a portion of the system be dismantled. In effect, the Plaintiffs were seeking to undo beneficial changes to the Property at great expense to the Defendants, which would have provided only a minimal benefit, if any, to the Plaintiffs. Leaving aside the timing of the Plaintiffs' initiation of numerous complaints against the Defendants (in the form of court proceedings, complaints to various entities, and reaching out to the media) after their offer to sell the Paolino Property had been rejected, and the concern this Court expressed regarding the reliability of Paolino's testimony, such actions are wholly inconsistent with a citizen plaintiff who legitimately seeks to prosecute violations of the CWA for the public good.

Moreover, Plaintiffs' efforts in bringing a successful suit

against the Defendants for alleged CWA violations was not conducted with particular diligence. See, e.g., Memorandum and Order dated July 2, 2014 (Dkt. No. 73)(noting that the Plaintiffs waited nearly six months to serve their written discovery requests and allowed fact discovery and motion filing deadlines to pass without action). Prior to proceeding to trial, Paolino had been advised by RIDEM that the water samples on which his complaints were based were inadequate, yet no improved method was employed to support the case. Much of the proposed testimony of the Plaintiffs' witnesses related to events that occurred decades before the events that were pertinent to the case. In addition, the Plaintiffs did not engage a water resources engineering expert—who was to conduct an investigation of the site, analyze his findings, and submit a report—until two weeks before the court-imposed deadline for such disclosure pursuant to Fed. R. Civ. P. 26. Notwithstanding the lack of evidence supporting the Plaintiffs' assertions, they pressed on and proceeded to trial.

The Plaintiffs relied, in great part, on the fact that the Defendants failed to provide updated information regarding ownership and/or operator identity after obtaining a RIPDES permit. As was established by the evidence submitted at trial, those inaccuracies did not reflect an effort by the Defendants to hide their identities or to avoid potential liabilities. The

change of ownership and/or management had already been disclosed to the RIDEM Fresh Water Wetlands Management Program. In addition, the Defendants immediately attempted to correct their failure to advise RIDEM formally of a change of which RIDEM was already aware.

Even assuming, *arguendo*, that the Plaintiffs' claims may have been fairly debatable when they were first brought in 2006, the factual circumstances had changed considerably by 2012 when the Plaintiffs commenced the instant case. By the time this case went to trial, the stormwater management system had been fully installed and implemented, and the system had been repeatedly improved (with input from RIDEM) to address any remaining turbidity issues; Paolino had been advised by RIDEM that all but one of his complaints were without merit; the protracted litigation in state court had resulted in nominal damages only; and the Plaintiffs had voluntarily dismissed all other state-raised claims, including those brought under the CWA, with prejudice. The Plaintiffs' attempt to have the Property restored to its original condition and to have a portion of the stormwater management system dismantled, both at minimal benefit to themselves, but at great expense to the Defendants, is not consistent with an action brought to protect the Nation's water resources.

In sum, the procedural history and the evidence submitted in this litigation demonstrates that this is not a case where a citizen plaintiff brought suit under the CWA and proceeded to trial in order to protect the public interest against a continuing environmental threat posed by a noncompliant defendant or where such threat was ignored by the responsible agencies. Rather, this is a case where the Plaintiffs continued to litigate against Defendants who had gone to great effort and expense to bring their Property into compliance and who had undisputedly improved the existing environmental conditions on their Property and its impact on public water resources.

Under those circumstances, the Court concludes that Paolino's continuing litigation against the Defendants was unreasonable and without foundation and that an award of attorney's fees is appropriate in this case.

## IV. Appropriate Fees

In support of their request for attorney's fees and costs in this case, the Defendants originally submitted a summary of the billing hours charged to the Defendants for services rendered since August 7, 2009, which precedes the date on which the second amended state court complaint was removed to this Court. That case resulted in a judgment dismissing all federal claims and remanding several state claims to the Rhode Island state court.

No attorney's fees were requested by the Defendants at that time. The second case, filed directly in federal court on June 6, 2011, was voluntarily dismissed by the Plaintiffs after only a few weeks. Again, no claim was raised for attorney's fees related to that case. Accordingly, the Court's consideration of the Plaintiffs' request will be limited to attorney's fees and costs incurred by the Defendants in the instant case.

The remaining question for a determination on the Defendants' request for attorney's fees is at what point in the litigation it became clear that the Plaintiffs' claims against the Defendants were groundless. This case was filed on January 20, 2012. At that time, the Plaintiffs already had been repeatedly informed by RIDEM that, with one exception, their complaints regarding the Property had no merit. However, because the Defendants challenged the Complaint for inadequate pre-suit notice, the case was dismissed on July 26, 2012, before any discovery had taken place.

The case was remanded on March 13, 2013, after which this Court issued a standard pretrial order on June 3, 2013, setting forth discovery deadlines. (Dkt. No. 23). Pursuant to the pretrial order, all factual discovery closed on January 27, 2014 and the Plaintiffs were required to make their expert disclosures by February 28, 2014. It is undisputed that the Plaintiffs did

not engage their primary expert, Dr. Roseen, until mid-February and, although Dr. Roseen made some findings and conclusions after the deadline for such disclosures had expired, the Plaintiffs failed to serve a revised expert report.

As noted in the Memorandum of Decision, the Plaintiffs sought to supplement Dr. Roseen's report only after the Defendants filed a motion for summary judgment, three months after Plaintiffs' disclosures had been due, and two weeks after the close of expert discovery. Plaintiffs' request was based on an assertion that their expert had not been able to access the Property until April 28, 2014. However, even after Dr. Roseen had been permitted to access the Property, the Plaintiffs failed to inform the Defendants that Dr. Roseen would be supplementing his report. Accordingly, the Plaintiff's untimely request was denied.

It is not an easy task to pinpoint the exact moment at which it should have been apparent to the Plaintiffs that their continuing litigation lacked merit. Although the sudden onslaught of complaints Paolino raised against the Defendants shortly after they declined to purchase the Paolino Property gives this Court pause, it is not necessary to consider whether the instant case was brought in "subjective bad faith." Likewise, RIDEM's repeated assurances to Paolino that his concerns about the Property were unfounded, are insufficient, on their own, to establish that all

of Plaintiffs' claims lacked foundation from the beginning.

However, once the Plaintiffs had conducted extensive discovery (documenting, in great detail, the responsiveness of RIDEM regarding Paolino's complaints) and engaged the services of Dr. Roseen, the Plaintiffs had sufficient information to consider whether they had reasonable grounds to proceed with the litigation. The Court is of the opinion that, by the time the Plaintiffs had reviewed, and responded to, the Defendants' motion for summary judgment on June 30, 2014, it was clear that further litigation against the Defendants was both unreasonable and groundless. On July 23, 2014, the Court conferenced the matter with the parties and informed them that, in the interest of judicial efficiency and in light of the voluminous materials submitted in support of the parties' respective positions on summary judgment, the case would proceed to trial.

The Court has reviewed the Defendants' billing statements and finds that, given the adversarial nature of the case, the complexity of legal and factual issues, and the necessity of preparing for trial in response to the Plaintiffs' continuing assertions, the requested attorney's fees are reasonable.

Accordingly, the Plaintiffs are ordered to pay attorney's fees in the amount of $111,784.50, which represents the total fees charged by Defendants' counsel from June 30, 2014 to October

29, 2014.[9]   Although the awarded amount is less than the
attorney's fees that the Defendants incurred in defending against
the persistent claims by the Plaintiffs, the Court is mindful of
the high standard applied in considering whether to award
attorney's fees to a prevailing defendant in a CWA action.


SO ORDERED.


/s/ Mary M. Lisi

Mary M. Lisi
United States District Judge
March 26, 2015

---

[9]

    The Court has excluded from its calculation two entries for
the preparation of documents for submission in related state court
proceedings.